## REBECCA THOMPSON

### *v.*

## JOSHUA SHOEMAKER.

1. PROMISSORY NOTE—*in equity assignee before due takes subject to maker's defenses.* Where the assignee of a promissory note acquired by him before maturity, proceeds to enforce payment in a court of equity by foreclosure of mortgage or other lien, he will occupy the same position that the payee would, and the maker may interpose any defense that would defeat a recovery in the hands of the payee.

2. CONSIDERATION—*of notes given for land.* Where a purchase of land is made under a bond or contract which provides for a conveyance of the title to the land upon payment of the notes given for the unpaid price, the true consideration of such notes, is not the warranty deed to be made, but the title to the land with which the purchaser is to be invested. If the title fails or can not be given, the consideration fails.

3. VENDOR AND PURCHASER—*right of vendor or his assignee to enforce payment.* In this case, the vendor, a married woman, sold a tract of land, giving the purchaser a bond for a warranty deed on payment of the notes given for the purchase money. The vendor sold and assigned these notes and gave the assignee a quit-claim deed to the land as a security for their payment. It appeared that the title was held by a trustee in trust for the use of the vendor during her natural life, and at her death for others: *Held*, on bill in chancery by the assignee against the purchaser to compel the payment of the notes, he having tendered a deed to the purchaser, that the complainant was not entitled to a decree for the payment of the purchase money, because he had not the ability to comply with the terms of the bond, and convey the title in fee to the purchaser.

4. The rule of law is different where the purchaser accepts a warranty deed for the land, gives his notes for the price, and enters into possession. In such case the purchaser can not resist payment of the notes until evicted under paramount title.

5. CROSS-BILL—*its nature and object.* The object of a cross-bill is to enable a defendant to obtain affirmative relief. It must be confined to the subject matter of the original bill, and may be filed against the complainant, or against him and a co-defendant. In most other respects it is governed by the same rules of practice as an original bill.

6. SAME—*party to—rescission of contract.* In a suit by an assignee of the vendor of land to collect the purchase money, where both the vendor and assignee are unable to make the title contracted for, the original vendor is a necessary party to a cross-bill by the purchaser to rescind the contract, and for the recovery of the purchase money paid, and for the value of improvements made upon the land before discovery of the defect in the title.

APPEAL from the Circuit Court of Washington county; the Hon. SILAS L. BRYAN, Judge, presiding.

Mr. L. M. PHILLIPS, for the appellant.

Mr. P. E. HOSMER, for the appellee.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was a bill in chancery, filed in the circuit court of Washington county, by Joshua Shoemaker, against Rebecca Thompson and others. An answer was filed, and also a cross-bill on behalf of Rebecca Thompson.

On the trial of the cause in the circuit court, the issues were found in favor of the complainant in the original bill, and a decree was rendered in all things as prayed for by the complainant. One of the defendants, Rebecca Thompson, appeals.

The evidence taken in this case shows that on the 4th day of June, 1869, Margaret J. Fields sold to Rebecca Thompson 40 acres of land, near Ashley, in Washington county, for $3000, and received $600 cash down, and took notes for the balance, payable in equal payments in one, two and three

years, with ten per cent interest. Rebecca Thompson took of Margaret J. Fields a bond for the conveyance of the land by general warranty deed, with full covenants, on the payment of the purchase money.

The complainant bought these notes of Margaret J. Fields in March, 1870, and took of her a quit-claim deed of the land in controversy to secure their payment. The title that Margaret J. Fields had to the land sold was as follows: 1866, May 8, Joel Morrow conveyed to Elvira L. D. Hise, as trustee for Margaret J. Fields. This deed provides that the trustee is to hold the land for her benefit and use during her natural life, and at her death the fee to go to her children, if she has any. If she had no children, then to go to one Morton. November 4, 1867, Hise, trustee, conveyed the land to Thomas C. Graves.

Thompson, since the trade, has occupied the premises and had the use of the same, and made some permanent improvements thereon.

There was evidence introduced on the trial for the purpose of showing that the patentee conveyed this land to one Howard, and that there was no conveyance from Howard to any person; also evidence for the purpose of showing fraud in the sale of the land.

This suit grew out of a trade made between two married women, conducted by their husbands as their *agents*. Fraud and unfair dealing are alleged.

But in the view we take of the case, it is entirely immaterial whether there was fraud or not, or whether Howard had conveyed the land or not. The decision of the case depends upon another question.

On the sale of these lands, Mrs. Fields gave Mrs. Thompson a bond, in which she agreed to convey by a general warranty deed of conveyance, on payment of the notes. Mrs. Fields assigned these notes to complainant, and gave him a deed of the land to secure him in their payment. The complainant, in his bill, seeks to obtain a decree to sell the

land to pay the notes. In other words, he is asking a strict foreclosure as upon foreclosure of a mortgage.

In equity, he occupies the same position that Mrs. Fields would had she instituted this suit. He has the same rights she had, and no greater. His purchase of the notes before due, in this case, gives him no advantage. *Olds* v. *Cummings et al.* 31 Ill. 190; *Walker* v. *Dement,* 42 Ill. 272.

At the time this suit was commenced, all the notes were past due. Now the question arises, can complainant compel payment of these notes without first offering to convey by warranty deed, and without having the title in fee simple to the land? We think not. Before he can compel payment of the notes, he must be ready, willing and able to perform his part of the contract. The bond calls for the title in fee to the land. He is, then, required to make the deed, and must at the same time be seized in fee of the land. The consideration of these notes was not a warranty deed to be made on payment of the notes, but the consideration was the title to the land which was to be conveyed by the deed. If the defendant, when the trade was made, had accepted a warranty deed, and taken possession of the land, it is true, as insisted by appellee, that she would not have been in a position to complain until she had been evicted; but this is a different case. She gave her notes for the payment of money and took a bond for the conveyance to her of the *title in fee to the land.* The party who gave the bond, or her assignee, can not insist on payment of the notes until he or she can comply with the bond by conveying the title to the land. *Tyler* v. *Young,* 2 Scammon, 444. The defendant is not required by the law to accept a warranty deed and rely on the covenants therein.

Did complainant, then, have the title to this land? The evidence shows clearly that he did not. Margaret J. Fields, as the record shows, had only a life estate in the lands, and this was held by a trustee for her use. This trustee conveyed to one Graves, and Graves and Mrs. Fields convey to complainant.

For the reason, then, that the complainant, who is the grantee of Mrs. Fields, had not the ability to comply with the bond, and convey the title in fee to the defendant, Rebecca J. Thompson, he is not entitled to a decree for the payment of the purchase money.

The next question that arises is, what relief, if any, is the defendant, Rebecca J. Thompson, entitled to under her cross-bill? She seeks to rescind the contract of purchase and recover the purchase money paid, and pay for permanent improvements.

The object of a cross-bill in a chancery case is to enable a defendant to obtain affirmative relief. It may be filed against the complainant or against the complainant and a co-defendant. It must, however, be confined to the subject matter of the original bill, and it is governed by the same rules of practice as an original bill. Those made defendants thereto, and not in court, must be brought into court in the same manner as upon an original bill, and required to answer. Indeed it is in the nature of a separate and distinctive suit. *Ballance* v. *Underhill*, 3 Scam. 453.

In this case, the defendant, by her cross-bill, made no one a party defendant thereto except the complainant in the original bill. Mrs. Fields, her vendor of the land in controversy, was not made a party. The defendant asks to rescind the contract made with Mrs. Fields, and to recover back money paid her, and at the same time, so far as this affirmative relief is concerned, she is not in court.

Mrs. Fields was a necessary party to the cross-bill, and as the pleadings in this case now stand, the defendant is not entitled to the relief she asks by her cross-bill.

The decree will be reversed and the cause remanded.

*Decree reversed.*