CATHARINE E. KEOHANE

v.

CHARLES M. SMITH et al.

*Filed at Ottawa November 20, 1880.*

· ASSIGNMENT *of negotiable paper secured by mortgage—notice to subsequent incumbrancer.* A negotiable instrument secured by mortgage was assigned before maturity. The mortgage described the instrument thus secured, showing its negotiable character and the date at which it would mature, and was duly recorded. The mortgage itself was not assigned, except as it passed in equity by the assignment of the instrument it was given to secure. Subsequent to the recording of the mortgage and the assignment of the instrument, and before the maturity of the instrument, the mortgagor effected a loan from a third person, and gave a mortgage upon the same premises embraced in the prior mortgage, it being the understanding that a portion of the money thus obtained should be applied in satisfaction of the prior mortgage. The mortgagor did pay the amount of the first mortgage debt, out of the money received from the second mortgagee, to the payee thereof, who thereupon gave what purported to be a release of the first mortgage. Upon bill filed by the assignee of the instrument secured by the first mortgage, for foreclosure, it was *held,* it not appearing that the payee, to whom the money had been paid, was authorized to receive the same in behalf of complainant, or had paid it over to him, the second incumbrancer held subordinate to the lien of the first mortgage. The second mortgagee having notice of the prior mortgage was thereby advised of the negotiable character of the paper secured by it, and that it was not yet matured, and he was put upon inquiry as to whether it had been assigned. Being so put upon inquiry, he was chargeable with notice of the rights of the assignee.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. SAMUEL M. MOORE, Judge, presiding.

Messrs. GARDNER & SCHUYLER, for the appellant:

1.    Payment of a negotiable promissory note to one not in possession of it, and who has no authority to receive payment, is no discharge of the note.    *Wheeler* v. *Guild,* 20 Pick. 525; *Baxter* v. *Little,* 6 Met. 7; *Davis* v. *Miller,* 14 Gratt. 1; *Coffman* v. *Bank Ky.* 41 Miss. 212; *Elgin* v. *Hill,* 27 Cal. 373.

2. When the maker of a promissory note pays to the payee, without requiring the production of the note, or without any evidence that the payee still holds it, he pays at his peril, and such payment does not prejudice the rights of the holder of the note. See cases cited to last point, and *Mayo* v. *Moore*, 28 Ill. 428.

3. When a mortgage secures a negotiable promissory note, and the note is assigned before maturity to a *bona fide* endorsee, payment to the payee is not good. *Reeves* v. *Scully*, Walker's Chy. Rep. 248; *Dutton* v. *Ives et al.* 5 Mich. 515; *Jones* v. *Smith*, 22 id. 360; *Bank, etc.* v. *Anderson*, 14 Iowa, 544; *McClure* v. *Burris et al.* 16 id. 591; *Roberts* v. *Halsted*, 9 Pa. State, 32.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

This bill was brought by Catharine E. Keohane to foreclose a mortgage made by Peter Sullivan and wife to Eben F. Runyan, dated March 12, 1869, to secure a note for $2000, payable five years after date, to the order of E. F. Runyan, with interest after due at the rate of 10 per cent per annum. It seems the interest to maturity of the note was evidenced by coupons of $100 each, payable at intervals of six months. Complainant left with Runyan $4000 to be loaned for her, and shortly afterwards she received from him the Sullivan note as a loan of so much money, which was indorsed by Runyan, and the note and coupons, with the mortgage by which the same were secured, were delivered to complainant. The mortgage was on record in the proper office, but there was no assignment of it to complainant other than the equitable assignment that comes by the assignment of the note it secured.

On the 20th day of July, 1870, Sullivan made an arrangement with Charles M. Smith to borrow $3000, and secure the money on the same property embraced in his mortgage to Runyan. The money Sullivan was to get did not belong to Smith, but to Mrs. Mary A. Roset, for whom he was act-

ing. Smith employed Norman C. Perkins to examine the
abstract of title, and report in writing, which he did. His
report showed the property was subject to the mortgage made
by Sullivan to Runyan. That incumbrance Sullivan pro-
posed to pay off out of the money he should receive from
Smith. Accordingly a trust deed to Smith was made by Sul-
livan and his wife, on the property in question, to secure
Sullivan's note or bond for $3000 to Mrs. Roset. Sullivan
took $2000 of the money received from Smith with which to
pay off the mortgage to Runyan. He says Perkins went
with him to Runyan's office, and saw the money paid and the
release delivered. Perkins does not recollect going to Run-
yan's office when the money was paid, but says, "Sullivan
may be correct about that." At all events, Perkins knew
the money was to be and was paid to Runyan to discharge
the mortgage, and by an additional note at the bottom of his
examination he informed Smith the release had been filed.
The release and the trust deed to Smith both appear to have
been acknowledged on the 28th, and recorded on the 29th day
of July, 1870. In September, 1875, Gerhard Foreman loaned
Sullivan $1000, and took a trust deed on the same property
embraced in the Runyan mortgage to secure the same. Both
Smith and Foreman were made defendants to complainant's
bill to foreclose the Sullivan mortgage, and the prayer of the
bill was, that whatever equities they might have in the premises
might be postponed to the superior equities of complain-
ant. On the hearing the Superior Court decreed that the
mortgage to Runyan is a valid and first lien on the property
as against all the defendants, except Foreman. That decree
was reversed by the Appellate Court, on Smith's appeal, and
now complainant brings the case to this court on appeal.

Counsel for complainant make no question against the
decree of the Superior Court giving priority to the trust deed
to Foreman, so that only the equities between the parties

owning the mortgage to Runyan and the trust deed to Smith remain to be considered.

The note of Sullivan to Runyan was a negotiable instrument, under our statute. It was for a definite sum, was payable absolutely on a day named, and was not dependent upon any contingency, either in regard to the event or the fund out of which payment was to be made, or as to the party by or to whom payment was to be made. These are qualities of negotiable paper both at common law and under our statute. The assignment of the note by the payee to complainant was an assignment in equity of the mortgage by which it was secured. Complainant became the *bona fide* assignee and holder of the note, for value, long before maturity, and as to her Sullivan could make no defence, either at law or in equity. He knew his note was outstanding, and if he paid it to a party not the holder, it was at his own risk as to whether such party would apply the money in payment of his outstanding note. Smith had notice of the same facts before he effected the loan on the same property for his principal, the owner of the indebtedness secured. He had actual notice of the existence of the mortgage, and that it was on record. It described the note, and from the description contained in the mortgage he must be held to have had notice that the note secured was not due. Being negotiable paper, he must have known it might have been assigned in the usual course of business, and might then be in the hands of an innocent holder for value. Under the circumstances it was his duty to have informed himself whether the outstanding note the mortgage secured had in fact been paid. Not to do so made it possible for the mortgagee to practice a fraud on the assignee of the note. Knowing the note was not due, and would not be for years to come, he ought to have inquired whether Runyan was still the holder, and could rightfully receive payment, and not to do so was gross carelessness. As was said in *Anderson* v. *Warne*, 71 Ill. 20, the rule of law is, where one of two persons must suffer loss, he who by

his negligent conduct made it possible for the loss to occur must bear it. It is his duty to use reasonable and ordinary precaution to avoid imposition, for it is against reason that a party who stands fair in a transaction should suffer for the negligent conduct of another. That is precisely the case here. Had the payor of the note secured by the first mortgage, or the trustee named in the trust deed, who was the agent of the owner of the indebtedness to be secured, given the slightest attention to the outstanding note, all difficulty would have been avoided. The maker of the note to Runyan says, when he went to pay off the mortgage indebtedness he " never passed a thought on the note," nor was the agent of the second mortgagee transacting the business a whit more careful as to what he was doing. It was not the usual care that an ordinarily prudent person observes in the transaction of his own business. Surely equity will not postpone the interests of one who stands fair, and who has omitted no duty devolving on him, to the interests of one whose negligence made it possible for loss to occur. Unless, therefore, Runyan was the agent of complainant to receive payment of the note, there can be no ground, either legal or equitable, for postponing her rights to those of the second mortgagee. The fact of such agency was an affirmative issue resting on defendants to prove. On a careful consideration of the evidence it is clear no satisfactory proof of such agency is to be found in this record. There is certainly no direct testimony of Runyan's agency in the matter, and the facts and circumstances in proof, about which there can be no dispute, are inconsistent with any such theory. The money was loaned on long time, as an investment to secure the interest. It was known to all parties to this transaction the note secured by the mortgage was not due, and there is not the slightest evidence she desired or ever thought of taking it up before maturity. She had no need of an agent to do that which she did not intend to do. But the

testimony is direct and positive that Runyan was not the agent of complainant to receive payment of the note secured by this first mortgage. There is much more reason for saying he was the agent of the maker rather than of complainant. Runyan had assigned the note to complainant, which carried with it in equity an assignment of the mortgage by which it was secured, and so far as he is concerned there can be no pretence he had any rightful authority to receive payment of the indebtedness and release the mortgage security. And certainly no ordinarily prudent person would make payment to him unless he had the note in his possession to be surrendered up, or gave some satisfactory explanation of why he did not have it.

The judgment of the Appellate Court will be reversed, and the cause remanded, with directions to affirm the decree of the Superior Court.

*Judgment reversed.*