Timothy McAuliffe, Admr. *et al.*

*v.*

John Reuter.

*Filed at Ottawa May 11, 1897.*

1. Variance—*objection for, not considered on appeal when not raised below.* An objection for variance between the allegation and proof cannot be considered on appeal when not properly raised at trial.

2. Mortgages—*assignment of mortgage is not perfect without notice to the mortgagor.* Mortgages and deeds of trust come within the rule that an assignment of a chose in action, other than a negotiable instrument, is not perfect so as to protect the assignee as against equities between the original parties, without notice of the assignment to the debtor.

3. Same—*assignee of mortgage takes subject to existing equities.* A mortgagor not having notice of the assignment of the mortgage, may, on suit by the assignee to foreclose, interpose any defenses arising out of the mortgage transaction which he might maintain against the mortgagee, notwithstanding the mortgage is given to secure a negotiable note.

4. Same—*when mortgagor is not chargeable with negligence in making payments.* One giving a mortgage to a bank to secure a loan, payments on which are to be made by deposits evidenced by a pass-book, is not chargeable with negligence in not demanding the production of the note when making deposits, where his action is justified by former dealings with the bank of the same nature.

5. Same—*when payment must be credited on mortgage debt though not endorsed on note.* Payments made by a mortgagor, evidenced by a pass-book but not endorsed on the note, must be credited *pro tanto* in discharge of the mortgage lien on foreclosure by the assignee of the note and mortgage, and as to the amount so credited the assignee has his only remedy by an action on the note.

*McAuliffe* v. *Reuter*, 63 Ill. App. 255, reversed.

Appeal from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. John Barton Payne, Judge, presiding.

Frank F. Follett, for appellants:

A complainant in equity must recover, if at all, on the case made by his bill. *Brockhausen* v. *Bochland*, 137 Ill. 552.

Although a good case may appear in the evidence, yet if it be variant from the one stated in the bill the bill will be dismissed.   *McKay* v. *Bissett*, 5 Gilm. 505.

A mortgage is not assignable although given to secure commercial paper; and where the *bona fide* assignee of commercial paper so secured seeks relief in equity by the foreclosure of the mortgage, the mortgagor may successfully interpose any defense which would have been available against the original payee or holder of the paper. *Scott* v. *Magloughlin*, 133 Ill. 35; *Railway Co.* v. *Loewenthal*, 93 id. 433; *Melendy* v. *Keen*, 89 id. 403; *Olds* v. *Cummings*, 31 id. 191; *Johnson* v. *Carpenter*, 7 Minn. 183.

In order to protect his rights, the assignee of a mortgage is bound to take an assignment and record it.   *Smith* v. *Keohane*, 6 Ill. App. 585.

Payment of a note by the mortgagor without notice of an unrecorded assignment defeats the claim of the assignee, and entitles the mortgagor to its cancellation. *Ingalls* v. *Bond*, 66 Mich. 338; *Goodale* v. *Patterson*, 51 id. 535.

A payment on a mortgage debt is an extinguishment *pro tanto* of the mortgage lien.   *Boone* v. *Clark*, 129 Ill. 466.

A mortgagor may pay or settle with a person having apparent authority to receive satisfaction of the mortgage, and a payment thus made will prevail against one having a secret, concealed and reserved interest in the mortgage.   *Mason* v. *Beach*, 55 Wis. 607; *Jackson* v. *Crafts*, 18 Johns. 110; *Mallory* v. *Mariner*, 15 Wis. 172.

Albert H. Meads, for appellee:

Equities must exist at the time of assignment, and an assignee will not be affected by after-accruing equities. *Eldred* v. *Hazlett*, 33 Pa. St. 307; *Walker* v. *Sargeant*, 14 Vt. 247; *Richardson* v. *Ainsworth*, 20 How. Pr. 521; *Murtaugh* v. *Colligan*, 28 Ill. App. 433; *Colehour* v. *State Savings Inst.* 90 Ill. 156.

The rule that where there is a note secured by mortgage, an innocent transferee of the note before maturity,

in a suit for foreclosure of the mortgage, will be subject
to any equitable defense against the mortgagor, is re-
stricted to all equities arising out of the note and mort-
gage transaction itself, and does not extend to a set-off
in respect of a debt due from the assignor to the mort-
gagor, arising out of a collateral matter. Chitty on Bills,
(13th Am. ed.) 251.

Where one of two persons must suffer loss, he who by
his negligent conduct made it possible for the loss to
occur must bear it. *Anderson* v. *Warne,* 71 Ill. 20.

The payment of negotiable notes secured by mortgage,
without demanding the production of the notes, is such
negligence that if loss accrues thereby the courts will
place such loss upon the party making such payment.
Jones on Mortgages, (4th ed.) sec. 956; *Windle* v. *Bone-
breake,* 23 Fed. Rep. 165; *Keohane* v. *Smith,* 97 Ill. 156.

Mr. JUSTICE CARTER delivered the opinion of the court:

This is an appeal from a judgment of the Appellate
Court affirming a decree rendered by the Superior Court
of Cook county against one John McAuliffe, now deceased,
in favor of the appellee, John Reuter, upon a bill filed to
foreclose a mortgage.

McAuliffe, in July, 1890, applied to Conrad L. Niehoff,
who was then a private banker in Chicago, for a loan of
$1000. He had previously borrowed $600 from Niehoff,
giving a mortgage on his homestead as security, and had
paid off that debt in installments as he was able, his
payments having been credited to him in a pass-book
furnished by Niehoff, and when the amount deposited
equaled the $600 note, the note and mortgage were can-
celed and returned to him. McAuliffe was an uneducated
man, unable to read, or even to write his own name, and
he relied upon Niehoff to carry out the agreement in the
same manner as the former one was carried out between
them. He gave to Niehoff his note for $1000, payable to
himself three years after its date, with interest at six per

cent, evidenced by six coupon notes for the semi-annual interest, endorsed the note in blank and delivered it to Niehoff, and he and his wife executed and delivered to Niehoff, as trustee, their deed of trust upon their homestead as security for the said notes. McAuliffe received only $900 from Niehoff, the balance being reserved for commissions, expenses, etc. Without rehearsing the evidence, we find therefrom that it was agreed between McAuliffe and Niehoff that McAuliffe should pay off said loan by installments as he should be able, in the same manner that he had paid off the previous $600 note, and that the manner agreed upon for so doing was, that McAuliffe should deposit with Niehoff, in his bank, such installments as he should be able to pay them, and that Niehoff would credit the same in a pass-book to McAuliffe, allowing four per cent interest thereon, until such deposits and interest should equal the amount due for McAuliffe's loan, when his note and deed of trust would be canceled and returned to him, as was done in respect to the previous loan: A pass-book was given to McAuliffe and he made his first deposit October 3, 1890, the note and deed of trust having been given July 9 of the same year. McAuliffe continued to make deposits from time to time, which were, with the accrued interest, credited by Niehoff, or by his employees in his bank for him, in McAuliffe's pass-book, until May 19, 1893, when such deposits and interest amounted to $900. These deposits were not made by McAuliffe in person, but by members of his family for him. They were not credited on the note, nor did the persons making such deposits ask for or see the note or deed of trust when depositing the installments, but they testified that in several instances they told Niehoff they had come down to pay money on the note and that he said it was all right; that any time they had any money, to send it down and he would take it just the same. On June 7, 1893, about a month before the note matured, Niehoff failed and closed

his bank. On July 24, 1890, but a few weeks after the
note and deed of trust were given, Niehoff sold, and
transferred by delivery, said note and deed of trust to
appellee for a sufficient consideration. McAuliffe paid
the interest, evidenced by the coupon notes at the bank,
as it matured, and Reuter took the coupons to the bank
and received the money therefor from Niehoff. Reuter
dealt altogether with Niehoff, as did McAuliffe, neither
the latter nor the former having anything to do with
each other in the transaction. McAuliffe was not noti-
fied by Reuter nor by Niehoff of the transfer of the note
and deed of trust, and had no knowledge or information
that the note and deed of trust had been transferred
by Niehoff, until July 5, 1893,—nearly a month after the
failure of Niehoff, and after the $900 had been deposited
and paid in to Niehoff at the bank,—but upon that date
Reuter notified McAuliffe that he was the holder of the
note and that it was payable at his office. Reuter and
McAuliffe, prior to that time, had no acquaintance what-
ever with each other, and Reuter had made no effort to
find out anything about him or the property described
in the deed of trust. McAuliffe claimed that the $900
which he had paid extinguished his debt, and refused to
pay anything more except the last coupon note of $30,
the amount of which he tendered to Reuter, but Reuter
refused to accept it. Thereupon Reuter filed his bill to
foreclose the deed of trust.

The cause was referred to the master, who took the
evidence and found and reported to the court that there
was $1000 due on the principal note and $87 for interest,
besides the $30 coupon note and $3.88 interest thereon,
and that the complainant was entitled to a solicitor's fee,
under the deed of trust, of $100, making a total due of
$1220.88; that the money deposited with Niehoff was not
paid on account of the note, but was deposited in the
usual course of business in Niehoff's bank. Numerous
objections were filed and overruled by the master and nu-

merous exceptions were taken to his report, all of which were overruled by the court, and a decree was entered finding the amount due as reported, and the premises were ordered to be sold to pay the same if payment should not be made within three days.

Appellants first contend that there is a variance between the allegations of the bill and the proof, but as this question was not properly raised in the trial court it is too late to raise it here. *Thompson* v. *Hoagland,* 65 Ill. 310; *Meers* v. *Stevens,* 106 id. 549.

As Reuter obtained the note from Niehoff before its maturity, for a valuable consideration and without notice of any of the alleged equities between the maker and Niehoff, in a suit upon the note McAuliffe would have no defense. But this is a suit to foreclose the deed of trust as a mortgage, and the law is well settled in this State that in such a suit, as a mortgage is a mere chose in action not negotiable, the mortgagor without notice of its assignment may interpose any defense arising out of the transaction with the mortgagee which he could set up against the mortgagee in case the bill were filed by him. This rule was announced in this State by this court in *Olds* v. *Cummings,* 31 Ill. 188, and has been re-stated and applied in a score or more cases since then, down to *Humble* v. *Curtis,* 160 Ill. 193, where it was said (p. 202): "That he (the assignee) would take the mortgage subject to the equitable defenses existing in favor of the mortgagor is settled in *Olds* v. *Cummings,* 31 Ill. 188, and numerous other cases. The reason there given is, that it is the duty of the purchaser of a mortgage, it not being assignable so as to vest the legal interest, to inquire of the mortgagor if there be any reason why it should not be paid." Thus, in *Thompson* v. *Shoemaker,* 68 Ill. 256, it was held that upon a bill filed by the assignee of a promissory note secured by mortgage, to foreclose the mortgage, he will occupy the same position that the mortgagee would, and that the mortgagor may interpose any defense that would

defeat a recovery by the mortgagee. And in *Sumner* v. *Waugh*, 56 Ill. 531, that "when a person buys that which is not assignable at law, relying upon a court of equity to protect and enforce his rights, he takes it subject to all the infirmities to which it would have been liable in the hands of the assignor." And in *Haskell* v. *Brown*, 65 Ill. 29, it was said that in such case a court of equity will let in any defense which would have been good against the mortgage in the hands of the mortgagee himself. (See, also, *Towner* v. *McClelland*, 110 Ill. 542, and *Shippen* v. *Whittier*, 117 id. 282.) In the latter case the security was in the form of a deed of trust, and it was said that the fact that the maker's notes were payable to himself and were endorsed only by him was unimportant.

Other cases might be referred to, but the rule is too familiar to require further citation, and counsel for appellee says he does not controvert the general rule, but he insists that this case falls within certain qualifying rules or exceptions which have been established by the decisions. In support of his contention he refers to *Colehour* v. *State Savings Institution*, 90 Ill. 152. There is, however, a clear distinction between that case and the case at bar, for the alleged usury set up as a defense was in the contract of extension of time of payment, which was entirely distinct from the contract of the notes, and it was said (p. 156): "It is the latter contract which appellee is seeking to enforce, and it makes no claim in respect of the former." And in commenting upon *Olds* v. *Cummings, supra*, and subsequent cases, it was further said: "We understand this as restricted to all equities arising out of the note and mortgage transaction itself, and not extending to a set-off in respect of a debt due from the assignor to the mortgagor, arising out of a collateral matter,—such an one as we view this here to be."

In the case at bar it was agreed between the mortgagor and mortgagee that the mortgagor should pay off the note and mortgage by making deposits from time to

time in the mortgagee's bank, to be evidenced by entries in a pass-book furnished by the mortgagee, and that when such deposits and the interest agreed upon should equal the amount due on the note, it and the mortgage were to be canceled. This arrangement was faithfully carried out by the mortgagor, who made the payments as deposits as agreed upon, and we think it is immaterial that the form of such payments was evidenced by entries in a pass-book made by the mortgagee, and was the same as that adopted by the bank in dealing with other depositors. By virtue of the transaction certain equities arose in favor of the mortgagor to have said deposits applied to the extinguishment of his debt, which clearly could have been enforced by him had the bill to foreclose been filed by Niehoff. Nor do we regard the point decided in *Keohane* v. *Smith*, 97 Ill. 156, as in conflict with our decision in this case. In that case it was held that it was not usual care that an ordinarily prudent person observes in the transaction of his own business, to pay off a note and take a release from the mortgagee before its maturity, without seeing or taking up the note or making any inquiry as to whether the mortgagee was still the holder of the note, and that upon a bill filed by the assignee such payment to the payee was no defense. Besides, it was there suggested that the record showed "much more reason for saying that the payee was the agent of the maker rather than of the complainant." Nor does the rule apply where the mortgage is assigned with the consent of the mortgagor. (*Melendy* v. *Keen*, 89 Ill. 395.) But there is no pretense in the case at bar that the mortgagor consented or knew anything of the transfer of the note and deed of trust until after he had paid the $900, and had, in addition thereto, paid all of the interest coupons except the last,—all of which payments were made to Niehoff, and not to Reuter. In respect to the question of agency, while it cannot be said that any agency is established, yet the record shows much more

reason for regarding Niehoff as the agent of Reuter than of McAuliffe, inasmuch as the interest coupons were delivered by Reuter to Niehoff, and the amount thereof was paid by Niehoff to Reuter wholly without the knowledge of McAuliffe, and all of Reuter's dealings were with Niehoff. It was also held in *Peoria and Springfield Railroad Co.* v. *Thompson,* 103 Ill. 187, that the general rule before stated does not apply to deeds of trust given to secure railroad coupon bonds intended to be thrown upon the market and circulated as commercial paper, and to be used as securities for permanent investments. As to such securities, it is very clear that the mortgagor would know that the very purpose of their issue would be to place them upon the market for sale, and to pass from hand to hand by mere delivery to purchasers.

We are satisfied that the case at bar falls within the general rule, and not within any exception to it, established in this State. Besides, upon principle, an assignment of a chose in action other than a negotiable instrument is not perfect so as to protect the assignee as against equities between the original parties, without notice of the assignment to the debtor. This is the general rule, and, unless mortgages and deeds of trust are to be treated as exceptions, the rule must be applied to them. Thus it is said in 2 Am. & Eng. Ency. of Law, (2d ed. 1079): "The assignee of a chose in action stands exactly in the shoes of his assignor. He succeeds to all of his rights and privileges, but acquires no greater right than his assignor had in the thing assigned." If the assignee would protect himself, he should give notice of the assignment to the debtor. If the business of the commercial world requires that mortgages shall pass, with the negotiable paper secured by them, free from the infirmities of non-negotiable contracts, the General Assembly has full power to so provide.

So far as the question of negligence is concerned, Reuter is shown to have been derelict, rather than Mc-

Auliffe. He dealt altogether with Niehoff and gave no notice to McAuliffe, and it is not an unreasonable inference, from the evidence, that if Niehoff had not failed McAuliffe might never have known of the transfer of his note and mortgage. On the other hand, as McAuliffe's payments by installments were to be credited only in the pass-book until the notes should be paid, there was no reason why he, or those making deposits for him, should see or inquire for the note until that time should arrive, and he was not chargeable with negligence for failure to do so. He relied upon Niehoff to carry out the contract as had been done in the previous transaction. So far from having any information to put him upon inquiry, by finding in the hands of Niehoff his coupon notes which he paid as they matured he was justified in the conclusion that the note and deed of trust were there also. Whether, under the facts of this case, McAuliffe would have been charged with notice had Reuter filed an assignment of the deed of trust in the office of the recorder of deeds it is not necessary to decide. But even that precaution was not taken.

The trial court erred in not allowing the payments made by McAuliffe in pursuance of his agreement with Niehoff, to the discharge of the mortgage debt *pro tanto*. As to that amount the only remedy appellee had against McAuliffe was by an action at law upon the note.

The judgment of the Appellate Court and the decree of the Superior Court are each reversed, and the cause is remanded to the latter court with directions to enter a decree in accordance with the views herein expressed.

*Reversed and remanded.*