# Lieb Sroelowitz and Anna Sroelowitz v. Friedrich Schultz.

1. FRAUD—*When One of Two Parties Must Suffer.*—When one of two or more innocent persons must suffer loss, the consequence must ultimately rest upon him whose conduct has made it possible for the loss to occur.

2. EQUITY—*Will Not Postpone the Interests.*—Equity will not postpone the interest of one who has omitted no duty devolving on him to the interests of another whose negligence has made it possible for a loss to occur.

3. MORTGAGE—*Not Assignable at Law.*—A mortgage or trust deed is not assignable at law, but an assignment of the notes thereby secured is, in equity, an assignment of such mortgage or trust deed, and a clear distinction exists in this respect between a negotiable note purchased and assigned in good faith, and the mortgage or trust deed by which such note is secured. The former passes free from all equities between the parties, and the holder of the legal title may enforce payment in a court of law; but the latter, not possessing the attributes of negotiable paper, is assignable only in equity, and subject to the equities between the original parties thereto.

4. SAME—*Duty of Assignee to Give Notice.*—It is the duty of the assignee of a mortgage to give to the mortgagor notice of the assignment, not only to ascertain what, if any, defenses exist, but also to protect himself against *bona fide* payments made thereafter by the mortgagor.

5. SAME—*Rights of the Assignee—Notice.*—The purchaser of a mortgage takes it subject to all the infirmities to which it is liable in the hands of the assignor. Every defense which the mortgagor or his representatives could have made against the mortgagee will be allowed in a court of chancery against an assignee of a mortgage or trust deed who has not given notice of the assignment to the maker, for the reason that it is the duty of a purchaser of a mortgage to make inquiry of the mortgagor if there be any reason why the obligation should not be paid.

6. SAME—*As Between the Mortgagor and an Assignee.*—A mortgage is a chose in action as between the mortgagor and any subsequent assignee, subject not only to the state of accounts between the mortgagor and mortgagee at the time of the assignment, but to all payments made to the mortgagee at any time before actual notice of the assignment.

7. SAME—*What the Assignee Takes.*—An assignee takes a mortgage subject only to the equities residing in the original obligor, and not to latent equities residing in some third person against the assignor, of

which the assignee has no notice, such, for example, as a *cestui que trust*. But the reason for this does not apply to a representative of the mortgagor, although he may be a subsequent grantee.

8. Same—*Duties of the Mortgagor.*—It is the duty of the mortgagor, and equally so of his grantees, in dealing with the mortgagee, to exercise that care and prudence which an ordinarily prudent person exercises in the transaction of business.

9. Maxim—*In Equity.*—Equity will not lend itself to deprive a party of a right which the law has secured him, if such right is intrinsically just in itself.

**Bill to Foreclose a Trust Deed.**—Appeal from the Circuit Court of Cook County; the Hon. Murray F. Tuley, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1898. Reversed and remanded with directions. Opinion filed January 2, 1900.

**Statement.**—This is a bill to foreclose a trust deed and set aside an alleged fraudulent release thereof by the trustee.

The trust deed in controversy was executed February 14, 1891, by one John C. Krasa, to secure his note for $4,500, due five years after date, together with ten interest coupons, the principal note and coupons being payable to the order of the said Krasa, and by him indorsed in blank. The note and interest coupons were all payable at the office of Theodore H. Schintz, who was the trustee named in the trust deed.

About a month later, the 14th or 15th of March, appellee, Schultz, purchased at their face value, and received from said Schintz, the notes and trust deed in question. No notice of the transfer was given to Krasa, the maker.

The 7th of May following Krasa sold the property to one Joseph Mueller, subject to the said trust deed, Mueller assuming and agreeing to pay the notes thereby secured. In February, 1892, Mueller sold and conveyed the same property to appellants, subject, as before, to the original trust deed now in controversy, and the purchasers assumed and agreed to pay the principal and eight remaining interest notes. Said interest notes were thereafter paid to Schintz, by whom the said loan was originally made, and at whose office they were payable as they respectively became due.

Schultz, the purchaser and assignee of the notes, was in the habit of taking the interest coupons to and leaving them with Schintz as they were about to mature, respectively, receiving the latter's check in payment. Appellants usually received notice from Schintz stating when the interest notes would be due, and that they were payable at his office. Schintz always had the coupons on hand and always delivered them to appellants as they were paid, and the latter supposed Schintz to be, as he said he was, the owner of the notes and trust deed.

Appellee, Schultz, never gave notice of his purchase or ownership of the notes and trust deed, either to Krasa, the original maker, or to appellants. So far as appears, no one but himself and Schintz had knowledge of Schultz's interest until after the principal note had matured and been released of record by Schintz as trustee. It is conceded by all parties to the record that Schultz never knew Krasa nor the appellants, and never had any transactions in person with either of them in connection with the trust deed or notes.

Appellants came from Russia less than a year before they purchased the premises in controversy. They were ignorant of the English language, which they could neither speak, write nor understand.

In August, 1895, appellants were notified by Schintz that the principal note would become due in about six months. In November following they went to Schintz and told him they would not be able to pay the $4,500 note in full when it matured, but could pay $800. Schintz thereupon told them they could pay this sum and execute a new mortgage and note for the remaining $3,700. Accordingly, December 4, 1895, following, appellants went to Schintz's office, paid him the $800 and executed a new note for the remaining $3,700, together with a new trust deed upon the property in controversy, to secure the same. At the time this payment was made and the new note executed appellants asked Schintz to cancel the old note and mortgage by drawing a line across it " as they do in Europe," and to give the

papers to them. Schintz replied, telling them in German that such was not the custom here, that the old note and mortgage were of no use and he would destroy them. He produced thereupon certain papers apparently resembling the old note and trust deed which it is now sought to foreclose; told appellants they were the original papers; proceeded to tear them up, and threw them in the waste basket, notwithstanding appellants' request that he deliver said papers to them. Appellants then asked him for a "clearance paper." He told them he would make out a release deed and file it of record. This he subsequently did about February 19, 1896, more than two months thereafter, but not until he had been repeatedly urged to do so by appellants.

The original note for $4,500 became due on or about February 14, 1896, and at or about that time appellee, Schultz, took the trust deed and note to the office of Schintz and asked for the money. He was told by Schintz that Krasa, the maker, whose obligation appellants had long before assumed and agreed to pay, was unable to pay at that time, but was about to make a new loan for the purpose; that Schultz would have to keep the papers and let the matter stand half a year longer, and that it was perfectly good. Appellee was not aware that Schintz, as trustee, had released the trust deed of record until more than a year after such release was recorded.

Moses, Rosenthal & Kennedy, attorneys for appellants.

It is the duty of the assignee of a note secured by a mortgage to give notice of the assignment to the mortgagor, not only to ascertain what, if any, defenses exist in favor of the mortgagor, but also to protect himself against any *bona fide* payments made to the mortgagor by the mortgagee. Towner v. McClelland, 110 Ill. 542; McAuliffe v. Reuter, 166 Ill. 499; Buehler v. McCormick, 169 Ill. 275.

The assignee of a note secured by a mortgage takes the mortgage subject to all defenses existing in favor of the mortgagor or his assignee against the mortgagee up to the time of the notice of the assignment. Olds v. Cummings,

31 Ill. 188; Walker v. Dement, 42 Ill. 279; Summer v. Waugh, 56 Ill. 531; McAuliffe v. Reuter, 166 Ill. 499; Buehler v. McCormick, 169 Ill. 275; Hortsman v. Gerker, 49 Pa. St. 288.

The mortgagor is justified in dealing with the mortgagee, unless notified of an assignment. Any *bona fide* payment for the full amount of the mortgage made by the mortgagor to the mortgagee will discharge the mortgage. Towner v. McClelland, 110 Ill. 551; McAuliffe v. Reuter, 166 Ill. 499; Beuhler v. McCormick, 169 Ill. 275; Goodale v. Patterson, 51 Mich. 535; Ingalls v. Bond, 66 Mich. 338; Johnson v. Carpenter, 7 Minn. 183; Hortsman v. Gerker, 49 Pa. St. 288.

If the assignee allow the mortgagor to believe that the mortgagee is still the owner and holder of the note secured by the mortgage, and the mortgagor pays the amount of the mortgage to the mortgagee, the assignee is estopped from denying the authority of the mortgagee to accept such payment and release the mortgage. McCabe v. Farnsworth, 27 Mich. 52; Jones on Mortgages, Vol. 1, Sec. 791 (3d Ed).

The trustee named in the trust deed may be the owner and holder of the note secured by the said trust deed. Bloom v. Van Rensselaer, 15 Ill. 507; Foster v. Latham, 21 Ill. App. 165; Darst v. Bates, 95 Ill. 513.

Where a blind person or an illiterate person has a written instrument falsely read to him, the reader misreading it to such degree that the instrument is of a nature altogether different from the instrument pretended to be read, then there is no negligence on the part of the person to whom the instrument is being read in accepting it as it was read. Puffer v. Smith, 57 Ill. 527; Rockford, etc., v. Schunick, 65 Ill. 223; Schaper v. Schaper, 84 Ill. 603; Van Brunt v. Singley, 85 Ill. 281; Clark on Contracts, 292.

Equity looks upon that as done which ought to have been done. Bispham Eq. Jur. 63; 1 Story Eq. Jur. 51.

Arnold Tripp, attorney for appellee.

The statute makes the recording of deeds notice only to

subsequent purchasers, and in order to affect the right of a prior mortgagee the subsequent purchaser must give notice of the transfer to the prior mortgagee. Boone v. Clark, 129 Ill. 466; Secs. 30 and 31, Chap. 30, Hurd's R. S. 1897; Hosmer v. Campbell, 98 Ill. 572; Iglehart v. Crane, 42 Ill. 261; 2 Jones on Mortgages, Secs. 16 and 24; McMillan v. McCormick, 117 Ill. 79.

Upon a bill to foreclose a released mortgage the only question is: Has the debt been paid? The release having been made without the consent of the holder of the notes, the fact that there was a consideration or that the release deed was delivered is of no consequence. Stiger v. Bent, 111 Ill. 328; Keohane v. Smith, 97 Ill. 156.

The assignee of a note and mortgage takes it subject only to those equities which exist in favor of the mortgagor at the time of the transfer and not as to equities existing in favor of third parties. Olds v. Cummings, 31 Ill. 189.

The mere fact that one collects the interest does not tend to prove that such person has authority to collect the principal note, or that he was the owner of such principal note. Cooley v. Willard, 34 Ill. 68; Stiger v. Bent, 111 Ill. 326.

The payment of negotiable paper secured by mortgage without demanding the production of the notes is such negligence that, if loss accrues thereby, the courts will place such loss upon parties making such payment. Keohane v. Smith, 97 Ill. 156; Cooley v. Willard, 34 Ill. 68; Windle v. Bonebreak, 23 Fed. Rep. 165.

The rule is that when one of two innocent persons must suffer loss he who, by his negligent conduct, made it possible for loss to occur, must bear it. Anderson v. Warne, 71 Ill. 20; Otis, Adm'r, v. Gardner, 105 Ill. 436; Keohane v. Smith, 97 Ill. 159.

MR. JUSTICE FREEMAN delivered the opinion of the court.

The controversy here is mainly between two parties, one or the other of whom must suffer because of the fraud of a third person.

The principle is that when one of two or more persons

must suffer loss, upon him whose conduct made it possible for the loss to occur must the consequences ultimately rest. Anderson v. Warne, 71 Ill. 20–22, and cases cited; Otis, Adm'r, v. Gardner, 105 Ill. 436–444. Equity will not postpone the interest of one who has omitted no duty devolving on him to the interests of another whose negligence made it possible for the loss to occur. Keohane v. Smith, 97 Ill. 166–160.

In the case before us it is apparent that both appellants and appellee omitted certain precautions, which if observed might have prevented the perpetration of the fraud. If, when appellee, Schultz, purchased of Theodore H. Schintz the note, secured by the trust deed which he now seeks to foreclose, he had given to Krasa, the maker, notice of the assignment, Krasa's grantees might have learned the facts. Schintz would thus have been deprived, probably, of the opportunity of deceiving them by false representations of his continued ownership and possession. At all events, Schultz would have fulfilled his legal obligation. On the other hand, had appellants refused to pay the $800 and deliver the new note of $3,700 to Schintz until advised, by some one disinterested and competent to ascertain the real facts, that the originals had been actually produced and canceled, as they appeared to have been, the perpetration of the fraud would have been effectually prevented.

It was the duty of the assignee, Schultz, to give to the mortgagor notice of the assignment, not only to ascertain what, if any, defense then existed, but also to protect himself against *bona fide* payments made thereafter by the mortgagor. A mortgage or trust deed is not assignable at law, but an assignment of the notes thereby secured is in equity an assignment of the trust deed. Buehler v. McCormick, 169 Ill. 269–274; McAuliffe v. Reuter, 166 Ill. 491–497. A clear distinction exists in this respect between a negotiable note purchased and assigned in good faith, and the mortgage or trust deed by which the note is secured. The former passes free from all equities between the parties, and the holder of the legal title may enforce payment in a court of

law; but the latter not possessing the attributes of negotiable paper is assignable only in equity, and subject to the equities between the original parties thereto. The purchaser of such instrument takes it subject to all the infirmities to which it is liable in the hands of the assignor. Every defense which the mortgagor or his representative could have made against the mortgagee will be allowed in a court of chancery against an assignee of a mortgage or trust deed who has not given notice of the assignment to the maker, for the reason that it is the duty of a purchaser of a mortgage to inquire of the mortgagor if there be any reason why the obligation should not be paid. Olds v. Cummings, 31 Ill. 188–192; McAuliffe v. Reuter, 166 Ill. 491–496, 497. And this applies equally to a trust deed.

In the case at bar, so far as appears no reason existed at the time of the purchase by and assignment to the appellee in favor of the maker of the trust deed or any one else why the note thereby secured should not be paid. In other words, there were no equities existing against the trust deed in the hands of Schintz, the holder, who stood in the position of mortgagee, at the time he assigned it to appellee. Inquiry of the maker would not have developed any reason existing at that time why the obligation should not be paid, in accordance with its terms, to whoever might be its owner, the original holder or his assignee.

There was still a possibility, however, that the maker, so long as he was without notice of the assignment, might in good faith make payments to the original holder of the trust deed with expectation that they would be applied and indorsed on the indebtedness thereby secured. In such case it has been held the assignee would not be protected under the trust deed in equity. It is said in Towner v. McClelland, 110 Ill. 542:

"The equitable assignee, to protect his rights against a payment by the mortgagor to the mortgagee, must give the former notice, actual or constructive, of its assignment. He may place the assignment on record or give notice of the assignment to the mortgagor."

In the case before us the payment intended to apply on

the debt secured by the trust deed was not made by the original mortgagor.   It was made by appellants, as subsequent grantees of the mortgagor, they having assumed and agreed to pay the obligation.   It is insisted, however, by appellant's counsel, that the want of notice of assignment to the maker of the note and trust deed deprives the assignee of protection also against payments made in good faith to the assignor, not only by the maker, but by the grantees of the maker.

In the present case the original maker of the note is not legally affected, as matters now stand, by the transfer of the trust deed without notice.   He may be, by the misapplication of the money intended to have been applied in payment of the note, but of the transfer of the note without notice he can not in any event complain.   The note, which was payable to the maker's order and by him indorsed, was negotiable, and passed as commercial paper by the transfer.   The want of notice of the transfer is no defense at law against the note for the maker, any more than for any one else.   It is only as to the trust deed, which is not assignable at law, that the want of notice could be any protection to the maker against the assignee seeking to foreclose in equity.   But Krasa, the maker of the trust deed, has since parted with his interest in the land, and its sale under foreclosure to satisfy the note would cause him neither loss nor injury.   He is not, therefore, liable to injury himself, as matters stand, unless, the debt not being satisfied by foreclosure and sale of the land or otherwise, he is compelled at law to pay it in whole or in part.

The question remains, however, whether, when appellants acquired the title and assumed and agreed to pay the debt secured by the trust deed in controversy, the latter became subject as to them to all the infirmities to which it was liable as against the maker, their indirect grantor, irrespective of whether the latter shall be injured or benefited by the transfer without notice.

The argument substantially is, that the assignee not having given notice to the original maker of the assignment of

the trust deed, nor to any one interested in the property for or through him, when appellants purchased they acquired title, with the liability under the trust deed " subject to all the infirmities to which it is liable in the hands of the assignor;" or in other words, subject to all the defenses to which it was then or might thereafter become liable in favor of the original maker until such notice should be given. The payment made to Schintz by appellants was not a payment of a debt of their own making, but a debt upon which the maker of the trust deed was still liable. Appellants had agreed to pay his debt as a part of the consideration for the conveyance. Had the payment to Schintz been made in good faith by Krasa, the original mortgagor, he having no notice of the assignment, there can be no question apparently that such payment would be a defense in equity to the foreclosure of the trust deed. Why should it not be an equally good defense in favor of his representatives, who paid his debt for him to the original mortgagee, whom they had no reason to suppose was not still entitled to receive it? In Hortsman v. Gerker, 49 Pa. St. 282–288, it is held that when payment is made under these circumstances, without notice of the assignment and without the presence of the mortgage, the loss, as between the party so paying and the assignee, falls upon the latter. It is said in that case that "the assignment operates as a new contract between the obligor and assignee, commencing upon notice of assignment." Here there was never any such new contract. It is said in McAuliffe v. Reuter, 166 Ill. 499 :

" Besides, upon principle, an assignment of a chose in action, other than a negotiable instrument, is not perfect so as to protect the assignee as against equities between the original parties, without notice to the debtor."

In Johnson v. Carpenter, 7 Minn. 176, it is held that where the debt is secured by a mortgage on real estate and also by a negotiable promissory note, the mortgage is a chose in action as between the mortgagor and any subsequent assignee, subject not only to the state of accounts between the mortgagor and mortgagee at the time of the

assignment, but to all payments made to the mortgagee at any time before actual notice of the assignment. It is said that by such payments, made after the assignment without notice, the lien is extinguished, the land freed from the incumbrance, and the mortgagee becomes a trustee of the sum paid for the benefit of the assignee. In Towner v. McClelland, 110 Ill. on p. 551, it is likewise held that " where a mortgage is assigned, and the mortgagor without notice pays the payee, who has parted with the note, that will discharge the mortgage, and in a suit to foreclose, such payment may be set up in bar of a decree for its foreclosure."

If such is the effect of a payment made to the mortgagee by and for the mortgagor, it is difficult to see why, upon principle, the result should not be the same when the payment is made by a representative and grantee of the mortgagor who is paying the latter's debt for him. It is true that an assignee takes a mortgage subject only to the equities residing in the original obligor, and not to latent equities residing in some third person, against the assignor, of which the assignee has no notice, such, for example, as a *cestui que trust*. But the reason for this does not apply to a representative of the mortgagor, although he be a subsequent grantee.

The case before us is not entirely free from difficulty. There was an omission of legal duty on one side, and a neglect or at least a failure to obtain adequate assurance that the debt was being paid to the real holder upon the other. The failure of appellee Schultz to give notice deprived appellants of all means of learning, except from Schintz, who the real holder of the debt was. Appellee, however, not only failed to give notice of the assignment, but he put it in the power of Schintz to deceive by placing in the latter's hands, regularly for collection, the interest coupons as they matured, with no indorsement or other indication that they were not in fact, as appellants supposed them to be, Shintz's own property. What is said in McAuliffe v. Reuter, above referred to, is applicable in the case at bar, sub-

stituting Schintz for Niehoff: " So far from having any information to put him upon inquiry, by finding in the hands of Niehoff his coupon notes, which he paid as they matured, he was justified in the conclusion that the note and trust deed were there also." While it is true that appellants appear to have placed a certain degree of confidence in Schintz, as is claimed by appellee's counsel, the same appears to be true also of appellee. When the principal note was about to mature, appellee showed apparently no less confidence in Schintz, for he accepted the latter's explanation of the delay in payment and assurance that the note was good, without further inquiry, for a very considerable length of time. The equity of appellants is manifestly equal in this respect to that of appellee, and where the equity is equal the law must prevail. Towner v. McClelland, 110 Ill. on p. 550. The trust deed not being assignable at law, and the assignee having to rely on a court of chancery to enforce and protect his rights, the court of equity will not enforce it in his favor if it ought not to be enforced in the hands of the assignor, by reason of payment made to the latter in good faith, when the assignee has given and the mortgagor has received no notice of the assignment. "The reason is, that equity will not lend itself to deprive a party of a right which the law has secured him, if such right is intrinsically just of itself." Olds v. Cummings, *supra*.

It must not be forgotten that it is the duty of the mortgagor and equally so of his grantees in dealing with the mortgagee to exercise that care and prudence which an ordinarily prudent person exercises in the transaction of business. It is not claimed in the case at bar that there were any facts or circumstances to put appellants on further inquiry than they seem to have made whether the mortgage note had been transferred. There seems to have been no doubt in their minds, and no reason to doubt, that Schintz was, as he claimed to be, the owner of the notes and trust deed. They had never seen the originals, and when Schintz showed them what he told them were the originals they had no reason to suspect and no means of detecting the fraud. They were unable to read, write or speak English,

but could converse in German with Schintz. They did request the production and delivery of the note and trust deed, and were told by Schintz that it was enough if these were destroyed. They were led to suppose that they had seen this done in their presence. They seem to have endeavored to exercise every precaution that seemed necessary, and the only negligence attributable to them is that they believed Schintz's statement, and were deceived. While experience seems to show that it is never safe to take every man's word upon matters of this kind, no matter how trustworthy he may seem to have been, it should not be considered gross negligence to put some faith in our fellow-men where, after several years experience with them, nothing has occurred, as in this case, to put us on guard or inquiry as to their honesty and truthfulness. In this respect the case differs materially from Keohane v. Smith, 97 Ill. 156, which appellee's counsel insist is decisive in favor of appellee.

In that case no inquiry was made before payment to the mortgagee whether the latter " was still the holder and could rightfully received payment, and not to do so was gross negligence." It is said in Buehler v. McCormick, 169 Ill. 269–276, " it is apparent that all that has been said in the different cases can not be fully reconciled;" but Keohane v. Smith seems to turn upon the negligence of the mortgagor and agent of the second mortgagee in not observing " the usual care that an ordinarily prudent person observes in the transaction of his own business." Thus it was said by Mr. Justice Dickey, in his separate opinion in Ogle v. Turpin, 102 Ill. 148, that in Keohane v. Smith " the second mortgagee in substance undertook to pay the debt in the first mortgage, and by her own negligence paid the wrong man." That case is also distinguished in McAuliffe v. Reuter, *supra*, and appears to be practically ignored, if not in effect overruled, in Towner v. McClelland, *supra*.

The equity of the appellee in the case at bar, being in no way superior to that of the appellants, the principle is applicable as stated in Olds v. Cummings, 31 Ill. on p. 193, the leading case upon the subject:

"The right of an assignee to set at defiance a defense which could be made against the assignor is an arbitrary statutory right, created for the convenience of commerce alone, and must rely upon the statute for its support; and is not fostered and encouraged by courts of equity."

It is said in McAuliffe v. Reuter, *supra:*

"If the assignee would protect himself he should give notice of the assignment to the debtor. If the business of the commercial world requires that mortgages shall pass, with the negotiable paper secured by them, free from the infirmities of non-negotiable contracts, the general assembly has full power to so provide."

We are of opinion that the bill to foreclose the trust deed in question can not be maintained. The judgment of the Circuit Court must therefore be reversed, and the cause remanded with directions to dismiss the bill for want of equity.