JOSEPH ARMSTRONG

*v.*

GRANT C. STEBBINS.

*Opinion filed December 20, 1905.*

VARIANCE—*question should be raised by objection or exception to master's report.* Alleged variance between the allegations of a bill and the evidence taken by the master should be raised by objection or exception to the master's report in order to be available on appeal.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of LaSalle county; the Hon. RICHARD S. FARRAND, Judge, presiding.

Appellee filed a bill for an accounting in the circuit court of LaSalle county, alleging, in substance, that on December 10, 1897, appellee and appellant, Joseph Armstrong, entered into a general co-partnership to raise money and purchase judgments which were liens on the property of one Matthew

218—41

White, and make certain judgments then owned by them in their own right or as assignees, they to advance certain moneys and borrow certain moneys at the bank on their joint note, any amount recovered in satisfying judgments, whether owned by them in their own right or as assignees, to be divided, four-ninths to appellee and five-ninths to appellant; further alleging that said co-partnership was carried on for a period of three years; that a large amount of judgments were purchased and redemptions made thereunder and a large amount of money received by appellant; that appellant redeemed a certain tract of land by virtue of said agreement and retains the title in himself, appellee alleging that the same is their joint property and that appellant has refused to come to an accounting with appellee; prays an accounting may be had and land redeemed by appellant be decreed to be co-partnership property, concluding with a general prayer for relief, etc.

The answer of appellant denies every allegation of the bill, and alleges that on December 10, 1897, appellant and appellee entered into an agreement that after that time they would make redemptions under certain judgments then owned and controlled by them, appellant to furnish five-ninths and appellee four-ninths of the money for that purpose and the profits to be divided in like proportions; that appellee wholly failed to perform his part of said agreement, etc., and that March 2, 1899, appellant and appellee stated their mutual accounts and agreed upon a balance due of $550, which appellant paid appellee in full settlement of all claims and demands to that date; also alleges that appellee has been guilty of *laches*.

The cause was referred to the master in chancery to take proofs and make report both of findings of fact and of law. The master found that the complainant was entitled to relief prayed for in said bill and that defendant was justly indebted to complainant in the sum of $730.51, with interest at the legal rate thereon from February 26, 1903, to the

date of filing the bill. Objections were filed to the master's report by appellant, which stood as exceptions in the circuit court by agreement of parties. The chancellor sustained the finding of the master and entered a decree accordingly, from which an appeal was prosecuted to the Appellate Court, where the judgment of the circuit court was affirmed and a ·certificate of importance granted to this court.

BROWNE & WILEY, HUTTMAN, BUTTERS & CARR, JOHN H. ARMSTRONG, and I. I. HANNA, for appellant.

H. M. KELLY, for appellee.

Mr. JUSTICE RICKS delivered the opinion of the court:

The facts in the case, as disclosed by the record, are substantially as follows: It appears that in the spring of 1895 one Matthew White failed. Judgments were entered against him in favor of various parties, among them being two in favor of appellee and two in favor of R. S. Parker & Co. Appellant's son, B. S. Armstrong, was a member of the firm of R. S. Parker & Co., and the owner of an undivided one-half interest in the Parker & Co. judgments. White's property was all taken under foreclosure proceedings, and there seemed to be little left for anybody. Benjamin Armstrong, who was at that time residing in Chicago, began a correspondence with appellee with the view of going together and making some arrangements to redeem the White land from the foreclosure sales, and after there had been some correspondence with them in reference to the matter, Benjamin Armstrong had his father, the appellant, meet Stebbins, and gave his father full power and authority to make any deal with Stebbins that appellant desired. After appellant and appellee had talked the matter over, it was agreed to form a partnership and use their own judgments, and any other judgments they could buy or use in any manner, to redeem, and to make as much as they could by such redemption, with the understanding that, regardless of whose judgments might

be used, they would share the profits and the proceeds of the amount recovered on a four-ninths and five-ninths basis, appellant to get five-ninths and appellee four-ninths. Pursuant to this agreement appellant and appellee went to the National City Bank and borrowed $5000, giving their joint note, and made redemption of a certain tract of land which had been sold under mortgage. The evidence discloses that at the time of the first redemption appellee did not have a sufficient amount of money with which to make the redemption, and was informed by Armstrong that it would make no difference,— that he would put up the amount required above the $5000 for that redemption and Stebbins could send him his part of the money in the near future. The redemption was made under the Benjamin Armstrong judgment. They next entered into an agreement with R. S. Parker that he should assign to them the judgment held by him, on the condition that they give him one-third of what they recovered on the judgment. They then redeemed a 255-acre tract from one Allen, who had foreclosed a mortgage, and the amount required to redeem this 255-acre tract was $5872.34. In their negotiations to obtain the Parker judgment both the parties actively participated, appellee having gone to Chicago for that purpose. In this transaction they also used the $5000 that was gotten from the bank on their joint note. After making the redemption of the 255-acre tract it was put up for sale and bid in by another party, who paid the Parker judgment, together with costs and interest, and $500 in addition to be applied on a judgment in favor of appellee, on an agreement that they would not again redeem from that sale. The amount, as shown, that was realized under this transaction was $3148.88. Appellant took the profits under these judgments and retained them, and refused to account to Stebbins. It appears that afterwards appellant and appellee entered into a written agreement on the 18th of March, 1898. The contract was solely in reference to money realized out of a 327-acre tract of land sold March 18, 1898, and the manner

in which the money was to be distributed. It was entirely distinct from the transactions had under the verbal agreement.

It is first insisted that there is a variance between the allegations of the bill and the proof, and that therefore it was error to enter the decree as entered by the chancellor. No objection or exception to the master's report raised any question of variance as to the allegations of bill and proof, which was necessary in order to have that question reviewed in this court. *McAuliffe* v. *Reuter,* 166 Ill. 491; *Crone* v. *Crone,* 170 id. 494.

Appellant contends that there was no partnership relation existing between them concerning the transactions in which $5000 was borrowed at the bank; but the evidence discloses that both parties signed the note at the bank and that appellee paid the interest on the note at two different times, and the money was afterwards used in other transactions in which there was no question but that both parties were interested. The master found, as a matter of fact, that appellee was interested in the second transaction, and that appellant should account to him for the profits realized out of the same. The record discloses that appellee is sustained by all the documentary evidence produced, which consists of various letters written by appellant, and is also corroborated by disinterested witnesses. We think the record fairly discloses that there was a partnership existing between them in reference to the transaction; and while certain money was sent appellant by appellee shortly after the contract was entered into, to apply on the first redemption, it was returned with instructions to retain it and obtain other money for the purpose of making other redemptions. And from appellant's letters it was apparent that he had secured sufficient money to carry the deal through on his own accord, yet there was nothing said in the letters that would lead appellee to believe that appellant had changed his mind in reference to allowing appellee his share of the profits that might be realized out of the transaction. The master and chancellor re-

fused to allow appellee any benefit or share of profit in the first transaction, and as he assigned no cross-error we are not called upon to consider it.

Appellant insists further that a settlement was had of all their transactions, in which he paid appellee $550 in full settlement of all their controversies; but the evidence discloses that the settlement was, in fact, a settlement only of a single transaction had under a written contract between them entered into on March 18, 1898, and in which the transaction in controversy was not mentioned, and nothing was said or done by either party to lead appellee to believe, or that should satisfy a court, that it was a settlement of all matters between them.

After a careful examination of the record we are of the opinion that the decree of the circuit court is equitable between the parties and sustained by the evidence. Other propositions raised by the answer of appellant are not argued and therefore considered waived. The judgment of the Appellate Court is therefore affirmed.

*Judgment affirmed.*