### Mary McNamara, Impleaded, etc., v. Thomas Clark.

1. PROMISSORY NOTES—*Payments to Unauthorized Persons.*—A person who makes payments upon a promissory note to a person representing himself to be and whom he believed to be the agent of the owner and holder of such note, without requiring him to produce the note, and being informed, by the receipt for the payment made, that the note was at the time in the possession of the owner, makes such payments at his peril.

2. SAME—*Where a Note is Made Payable at a Particular Place.*—

The mere fact that a note is made payable at a particular place does not relieve one who pays it at that place from being required to pay it again if the note is not there.

3. SAME—*Equitable Assignments.*—An indorsement of a promissory note, as follows—"Pay to the order of Thomas Clark. Patrick McNamara, per P. W. Snowhook," taken together with the delivery of the note and trust deed securing it, and the payment therefor by him, and his subsequent continued possession of the same, amounts clearly to an equitable assignment thereof to him, and entitles him to maintain a bill to foreclose the trust deed, and he can not be required to prove either the execution of the note or its assignment to him, in the absence of any issue raised by the pleadings concerning such assignment and execution.

4. PARTIES—*Assignors of Notes and Trust Deeds.*—In a proceeding to foreclose a trust deed, by the assignee of the note and trust deed, the assignor is not a necessary party.

**Foreclosure of a Trust Deed.**—Appeal from the Circuit Court of Cook County; the Hon. THEODORE BRENTANO, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1899. Affirmed. Opinion filed November 7, 1899.

**Statement of Case.**—This is an appeal by Mary McNamara from a decree of the Superior Court in proceedings to foreclose a deed of trust, executed by her with her husband (now deceased), to secure her note of $600. Her defense was payment of note in full and release of the trust deed by Patrick W. Snowhook, the trustee.

On October 23, 1896, Mary McNamara obtained a loan through Patrick W. Snowhook, an attorney, of $600, and gave her note therefor, secured by a deed of trust, conveying to Snowhook her homestead. The note was an ordinary promissory note, due three years after date, to the order of Patrick McNamara (no relation to appellant), with interest at seven per cent per annum, eight per cent after maturity. "Principal and interest payable at the office of Patrick W. Snowhook." Mary McNamara never saw Patrick McNamara, but says she thought Snowhook was his agent.

Subsequently (the exact time is disputed) Snowhook bought the note of Patrick McNamara, whose whereabouts are thereafter unknown. Snowhook afterward, presumably

before maturity, sold the note to the appellee, Thomas Clark, who took it and the trust deed home, and kept them in his possession, except when he brought them with other notes purchased from Snowhook to receive his interest thereon, which interest would then be indorsed on the note by Snowhook.    Indorsed on the note are these words :

"Pay to the order of Thomas Clark.

PATRICK McNAMARA,
Per P. W. Snowhook."

There is no evidence as to when, how, or by whom, this indorsement was made.

It is written on the note just below the indorsement of interest paid to " Oct. 23, 1888," and just above the indorsement of interest, paid to "April 23, 1889."

Mary McNamara knew nothing of these transfers, but paid her semi-annual installments of interest to Snowhook at his office when they fell due.    On October 21, 1889, she paid Snowhook at his office $300, on account of the principal of her note, making an agreement for an extension of the balance, and received a receipt, with agreement for extension, which is as follows :

"CHICAGO, Oct. 21, 1889.

Received of Mary McNamara the sum of three hundred ($300) dollars, the same being paid to me to apply on her note in favor of Patrick McNamara, now in the hands of Thomas Clark, dated October 23, 1886, bearing interest at the rate of seven per cent per annum.    Received also twenty-one ($21) dollars, the same being the interest from April 23 to October 23, 1889, on said six hundred ($600) dollars.

The payment of the balance of said note is to be extended for one year from this date at seven per cent. interest.

P. W. SNOWHOOK."

Snowhook never paid this $300 over to Clark, and never informed him of its payment, but when he came in with his note to receive his interest, paid over the interest and indorsed it on the note as usual.

On or about August 28, 1890, she paid the balance due on the note to Snowhook at his office, who gave her a release deed of the deed of trust, which release she at once recorded.

She did not ask for or receive the note or trust deed, but accepted Snowhook's statement that the release was all she needed. Clark had known Snowhook a long time and had purchased other notes and mortgages from him. He was ignorant of business methods, could not read and knew nothing about arithmetic and figures. He never received any of the payments on account of the principal of the note, and was not told that it had been paid, but Snowhook continued paying him installments of interest on $600 down to and including April 23, 1894. In the fall of 1894, Clark told Snowhook that he was going to the old country and wanted the principal of this note paid on the following May, and Snowhook told him that he would have the money for him at that time, but Clark never received it.

BURLEY & McSURELY, attorneys for appellant.

ROBERT E. PENDARVIS, attorney for appellee.

MR. JUSTICE SHEPARD delivered the opinion of the court.

The payments made by appellant to Snowhook were made at her peril. Neither the note nor the trust deed were in the possession of Snowhook when she paid any part of the money here in controversy and, of course, were not produced to her at the time. She was expressly informed by the contents of the receipt and extension agreement given to her by Snowhook on October 21, 1889, which was before the note became due, that Clark, the appellee, held the note.

With that knowledge by her, she certainly may not equitably claim the right to be protected against her own act in making payment to anybody except Clark or his authorized agent, without production of the note.

The evidence fully justifies the finding by the master that Snowhook was not the agent of Clark to collect the principal of the note, and that appellant's payment thereof to Snowhook was made at her own risk.

The circumstances that appellant obtained the loan through Snowhook, that he was named as trustee in the

trust deed, that the note was made payable at his office, and that interest had been paid to him, may furnish bases for barren intellectual inferences, but do very little more in aid of appellant.

The mere fact that a note is made payable at a particular place does not relieve one who pays its amount at that place from being required to pay it over again if the note be not there.

The cases of Stiger v. Bent, 111 Ill. 328, Keohane v. Smith, 97 Ill. 156, and Viskocil v. Doktor, 27 Ill. App. 232, may be referred to as disposing of the contentions of appellant in respect of the matters we have mentioned.

It is contended by appellant that there was no legal assignment to appellee of the note secured by the trust deed. The note is payable to the order of Patrick McNamara. On the back of the note is indorsed, "Pay to the order of Thomas Clark.   Patrick McNamara, per P. W. Snowhook." There is no direct proof when or by whom such indorsement was made.   From the fact that four payments of semi-annual interest, from October 23, 1886, to October 23, 1888, are indorsed upon the note before the indorsement of the above purported assignment, and that eleven indorsements of semi-annual interest down to April 23, 1894, follow after the indorsement of the purported assignment, it may be fairly inferred that the assignment to Clark took place upon or after October 23, 1888, and on or before April 23, 1889, which is the date of the first indorsement of interest following the purported assignment.

To make it plainer, perhaps, the indorsement of the assignment, as it appears on the back of the note, occurs between the indorsements of the payments of interest to October 23, 1888, and to April 23, 1889.

Appellant did not in her answer specifically deny the assignment of the note to appellee, although she did deny that he "is the holder and owner of any note made and executed by her."

It was proven that at the time appellee purchased the note and trust deed of Snowhook, they were delivered to

him, and that he ever afterward kept them in his possession, only taking the note to Snowhook whenever he went to collect the interest, but never leaving it with him.

We need not discuss whether the legal title of the note passed by the indorsement or not. Such indorsement, taken together with the delivery of the note and trust deed, and the payment therefor by appellee at the time, and his subsequent continued possession of them, amounted most clearly to an equitable assignment thereof to him, and entitled him to maintain his bill to foreclose. Nor was he required to prove either the execution of the note or its assignment to him, in the absence of any issue concerning the same being properly presented by appellant.

Nor need we discuss at length whether or not, under the circumstances, the note was subject to any equitable defenses in favor of the appellant, either as against appellee or the original payer of the note. The appellant does not claim any equities against the note prior to the time she paid three hundred dollars to Snowhook, on October 21, 1889, to apply on the principal sum, and at that time not only was the note not held or produced by Snowhook, but she was informed by the receipt and extension agreement then given her, that Clark, the appellant, was the holder of the note.

So, the real question comes back to that already disposed of, as to whether or not she made the payments on that day and subsequently, to Snowhook, at her own risk.

Some contention is made that Snowhook was the agent of the appellee, but the evidence is conclusive that he was not such agent for collection of the principal, and it is only as to payments on the principal of the note that controversy exists.

It is claimed by appellant that McNamara was a necessary party to the bill. The evidence showed, without contradiction, that after two or three payments of interest were made, McNamara desired to leave Chicago and wanted the money he had put into the loan, and that Snowhook bought the note and trust deed from him—paying therefor

the principal and accrued interest—and received from him the papers, and afterward sold the same to appellee.

We see no necessity for McNamara being made a party. Wilson v. Spring, 64 Ill. 14.

There are some minor matters urged by appellant which do not require particular comment.

Upon the whole record we discover no material error, and the decree of the Superior Court is affirmed.