## Carrie N. Sheldon et al. v. Drusilla McNall.

1. MORTGAGES—*Duty of Purchaser.*—It is the duty of the purchaser of a mortgage to inquire of the mortgagor if there is any reason why it should not be paid.

2. SAME—*With Whom the Mortgagor May Settle.*—The mortgagor may pay or settle with the person having apparent authority to receive satisfaction of the mortgage; and a discharge of the mortgage thus obtained will prevail against those having a secret, concealed or reserved, interest in the mortgage.

3. SAME—*Payment Made to Mortgagee by Owner of Property.*—The payment of a mortgage by the mortgagor to the mortgagee, without notice of an unrecorded assignment, defeats the claim of the assignee and entitles the mortgagor to its cancellation and discharge.

**Bill to Foreclose Trust Deeds.**—Appeal from the Circuit Court of Iroquois County; the Hon. ROBERT W. HILSCHER, Judge, presiding. Heard in this court at the April term, 1900. Reversed and remanded with directions. Opinion filed April 10, 1900.

PADEN & GRIDLEY and PAYSON & KESSLER, attorneys for appellants.

KAY & KAY, attorneys for appellee.

MR. PRESIDING JUSTICE CRABTREE delivered the opinion of the court.

Appellee· filed bills in equity in two separate suits against appellants, to foreclose certain trust deeds executed by them to John S. Sheldon, which were given to secure the payment of two so-called notes for the sum of $1,000 each, payable to the order of said Sheldon, and which, it is alleged, were assigned by him to appellee. Answers were filed by the appellants, and the causes being at issue, it was ordered by the court that they be consolidated and heard together as one case. Testimony was taken before the master, and on a final hearing a decree was entered in favor of appellee for the full amount claimed to be due upon both mortgages, to wit, the sum of $2,262.48 (being $1,131.24 upon each mortgage), besides solicitor's fees, and ordering a sale unless the amount found due was paid by appellants within thirty days from the date of the decree. Defendants below prosecute this appeal.

The facts out of which the controversy arises are substantially as follows: On and prior to May 29, 1894, John S. Sheldon was a banker and real estate dealer at Loda, Illinois. He was a cousin of appellant Carrie N. Sheldon, and nephew by marriage of Martha A. Sheldon, co-appellant and mother of said Carrie. Henry H. Sheldon, the husband of Martha and father of Carrie, died in August, 1887, leaving several farms in Iroquois county and considerable personal estate. John S. Sheldon appears to have had much to do with the settlement of the Henry H. Sheldon estate, and after the property was divided had charge of the renting and managing the portion which came to appellants. In making a division of the real estate it became necessary for appellants to borrow some money to pay to other heirs, and an arrangement was made with John S. Sheldon to furnish $2,000 for that purpose. According to the testimony of appellants, they were very ignorant as to business matters, but had all confidence in John S. Sheldon and implicitly trusted him to transact the business for them. He prepared and sent to them applica-

tions to himself for two loans of $1,000 each, authorizing him as their attorney to procure the loans for them. In the view we take of the case, we deem a further description of these applications unnecessary. At the same time John S. sent to them obligations, or so-called notes, for the sum of $1,000 each, and also mortgages or trust deeds securing the payment of the same, which were duly executed by appellants and returned to him. As we understand the evidence, he had already advanced the money before the obligations and mortgages were executed.

Each of the obligations or instruments in writing secured by the mortgages, were of the tenor and effect following:

"$1,000.                        LODA, ILL., May 29, 1894.

On the first day of June, 1899, after date, for value received, for money loaned, we promise to pay to the order of John S. Sheldon, of Loda, Ill., one thousand dollars, at his banking house in Loda, Ill., with interest on the same at the rate of seven per cent per annum after due until paid, according to the tenor of a certain trust deed bearing even date herewith, given by Carrie N. and Martha A. Sheldon to John S. Sheldon, trustee. See conditions on back of note.

MARTHA A. SHELDON,
CARRIE N. SHELDON."

Indorsed upon the back of the note was the following:

"Reserving the right to pay $500 on this note at the end of any interest year, on giving sixty days' notice of intention to pay same, to John S. Sheldon, trustee."

Accompanying the principal note or obligation in each case were five coupon notes for the sum of $60 each, to cover the annual interest accruing upon the principal sum specified in the mortgages respectively. The mortgages were recorded June 6, 1894, and on June 15, 1894, the securities were sold to J. D. Riggs for $2,005, the purchase being made for appellee; all the papers, including the applications and the so-called notes and mortgages, were delivered by Sheldon to Riggs, upon the back of the notes being the indorsement, "Pay Drusilla McNall or order, at Buckley, Ill. Presentment for payment, protest notice of protest and non-payment waived." "John S. Sheldon."

The interest due on these loans June 1, 1895, was remitted by John S. Sheldon to J. D. Riggs at Buckley, Ill., by mail, and Riggs returned to John S. the proper coupon notes for such interest. The same course was pursued with regard to the interest due June 1, 1896.

After these loans were made by John S. Sheldon to appellants he continued to act as their agent in the collection of rents on their farms, and upon notes they held against third parties, and as he made collections for them the proceeds were deposited in his bank to their credit. He sent them, from time to time, drafts for such small amounts as they needed, upon their writing a request for him to do so, but they do not appear to have ever drawn checks upon such deposit to their credit. The whole account was kept by John S. Sheldon, and appellants seem to have trusted him to keep the account correctly. Many letters passed between appellants and John S. Sheldon as to their accounts and business matters, and frequent reference was made to a desire of appellants to make a partial payment upon the securities they had given to him for the $2,000. Some of these letters are said to have been lost, but a good many were put in evidence, and while it would too greatly extend the limits of this opinion to quote from them at length, we are satisfied they show a strong desire on the part of appellants to make a payment on this $2,000 indebtedness whenever the funds in the hands of John S. Sheldon were sufficient to permit of their doing so. Prior to June 1, 1895, the deposit in John S. Sheldon's bank to the credit of appellants was upward of $1,000, and they then directed him to apply $500 on each of the obligations. Apart from any letters on this subject, the uncontradicted testimony of both the appellants is, that on the date last mentioned they were at John S. Sheldon's banking office in Loda, and directed him to apply $1,000 of the moneys in his hands belonging to them, upon these mortgages, $500 on each; that he told them he would do so, and on the next day informed them that he had done so. When they asked for a receipt to show the fact, he told them it was unnecessary

because it was indorsed on the back of the mortgages, and that was all that was necessary. Appellants appear to have rested upon this assurance of John S. Sheldon and supposed the $1,000 had been applied as directed. There is not a particle of proof in the record to show that appellants had any knowledge of the fact that John S. was not then the owner of the mortgages, or that they had any reason to suspect or believe that he had sold or transferred them to appellee or any other person.

About April 23, 1897, John S. Sheldon failed in business, and it is admitted that in consequence of his criminal practices in the course of his business he fled the country, and has since that time been a fugitive from justice, and his whereabouts are now unknown.

The controversy in this case turns upon the question as to who should lose this $1,000—appellants or appellee? That John S. Sheldon had that amount in his hands belonging to appellants, and was directed by them to apply it on the mortgages in suit, is not denied; but it is insisted by appellee, that as she was the owner of the securities at the time the payment was made, she is not bound thereby. That John S. Sheldon was not her agent to receive the money, and had no authority to bind her in the transaction.

On the part of appellants it is claimed that appellee was bound by the payment, for several reasons:

1. Because it is claimed the so-called notes were non-negotiable. To this point are cited the cases of Am. Ex. Bank v. Blanchard, 7 Allen, 333, and Cushing v. Field, 70 Me. 50. These cases would seem to support the proposition contended for, but we prefer to put our decision of the case upon other grounds, which render a discussion of this point unnecessary.

2. It is next insisted that the terms of the so-called notes were such, that the holder thereof was charged with notice of payment and of equities which might arise between the original parties.

This point will be considered in connection with the third contention, which is:

3.   Under the law a mortgage is not assignable, and payment on the note to the mortgagee was good against the holder if made without notice of the assignment.

That a mortgage is not assignable at law, has been the well-settled doctrine of the courts of this State ever since the case of Olds v. Cummings, 31 Ill. 188, where it was held that a mortgage, being a mere chose in action and not negotiable, the mortgagor having no notice of the assignment, may interpose any defense arising out of the transaction with the mortgagee, which he could set up against the mortgagee in case a bill were filed by him.

Caton, C. J., in delivering the opinion of the court, said :

"We have not met with a single case where remedy has been sought in a court of chancery upon a mortgage, by an assignee, in which every defense has not been allowed which the mortgagor or his representatives would have made against the mortgagee himself, unless there has been an express statute authorizing the assignment of the mortgage itself.    And the reason is, that it is the duty of the purchaser of a mortgage to inquire of the mortgagor if there be any reason why it should not be paid.''

This is broad and comprehensive language, but the doctrine therein announced has been firmly adhered to by our Supreme Court in many cases since, and in fact in every case where the facts warranted its application.   There can be no doubt that the great weight of authority sustains this view of the law.

An attempt has sometimes been made to draw a distinction between equities existing prior to the assignment and those arising thereafter, and no doubt the distinction is good to this extent, that when the mortgagor has notice of the assignment he may not thereafter so deal with the original mortgagee as to create new equities to the prejudice of the assignee.   In other words, the mortgagor, with notice of the assignment, would have no right to pay the mortgage debt to the original mortgagee, so as to bind the assignee to the latter's loss or injury.   But we think this all depends upon the question of notice, and where the mortgagor has no notice of the assignment, and has no reason to suppose the

original mortgagee is not still the holder and owner of the mortgage, payment may be made to the mortgagee and the assignee will be bound thereby.

" The principle seems to be well established that the mortgagor may pay or settle with the person having apparent authority to receive satisfaction of the mortgage; and a discharge of the mortgage thus obtained will prevail against those having a secret, concealed or reserved interest in the mortgage." Mason v. Beach et al., 55 Wis. 607. See also, Jackson v. Crafts, 18 Johns, 110.

It has been held that payment made to the mortgagee by the owner of the property mortgaged will extinguish the mortgage and be binding on the holder of the note. 3 Randolph on Com. Paper, 520, No. 1,449, citing Jennings v. Vickers, 31 La. An. 679; Johnson v. Carpenter, 7 Minn. 176. In the Minnesota case it is held that such payment is good, although made after, but without notice of a transfer of the note.

In Ingalls v. Bond et al., 66 Mich. 338, it is held that the payment of a mortgage by the mortgagor to the mortgagee, without notice of an unrecorded assignment, defeats the claim of the assignee and entitles the mortgagor to its cancellation and discharge. Other authorities might be cited to the same effect, but we deem it unnecessary.

The case of McAuliffe v. Reuter, 166 Ill. 491, in its principal features was very similar to the one now before us, and we think is of controlling force in the determination of the controversy here involved. In that case there was no question as to the negotiability of the note, but it was held that a mortgagor, not having notice of the assignment of the mortgage, may, on suit by the assignee to foreclose, interpose any defenses arising out of the mortgage transaction which he might maintain against the mortgagee, notwithstanding the mortgage is given to secure a negotiable note. There, as here, the mortgagee was a private banker, in whose bank the mortgagor made deposits from time to time, upon the agreement that the mortgagee would credit such deposits upon a pass-book, interest at four (4) per cent being allowed on such deposits until such time as

the deposits and interest should equal the amount due on the mortgage loan, when the note and mortgage should be canceled and returned to the mortgagor. Shortly after the note and mortgage were executed, the mortgagee sold and transferred them to a third party. Of this the mortgagor had no notice, and continued to deposit money with the mortgagee until the amount reached the sum which the mortgagor had received from the mortgagee when the latter failed, and the mortgagor then received notice for the first time that the mortgage and note had been assigned. The assignee of the mortgage had received his interest from the mortgagee, but had never had any communication whatever with the mortgagor.

It was held that the assignee was bound by the payments to the mortgagee. It was further held that the mortgagor was not chargeable with negligence in not demanding the production of the note and mortgage when making deposits, when his action was justified by former dealings with the bank of the same nature.

Applying the principles above set forth to the case at bar, we think appellee must be held bound by the payments made by appellants to John S. Sheldon, the mortgagee. As we have seen, they had no notice whatever of the assignment of the securities to appellee, nor is there anything to show they had any reason to suppose John S. Sheldon was not the owner of the mortgages. They were assured by him that the payments were indorsed upon the notes, and they believed him. They were not bound to go into the world and inquire whether or not some third person had an equity in the securities, because there was nothing to put them upon such inquiry. On the other hand, it would have been a very simple matter for appellee to have given notice to appellants that she had purchased the mortgages, and had she done so, the controversy now pending would not have arisen. After such notice, payments made by appellants to John S. Sheldon would no doubt have been at their own peril and risk. By the very terms of the condition indorsed upon the back of the notes, appellee had notice

that the mortgagors reserved the right to pay $500 on each of the mortgages at the end of any interest year, on giving sixty days' notice to John S. Sheldon. On the face of the notes it was provided that the money should be paid to John S. Sheldon, at his banking house in Loda, Illinois. It seems to us that prudence would have dictated to appellee that she give notice to appellants of her rights in the premises, and that not to have done so was greater negligence than any which can be attributed to appellants. Appellee received her interest through John S. Sheldon for two years, and surrendered to him the interest coupons, so she had notice that appellants were paying their money to him, notwithstanding the assignment of the mortgages, of which they knew nothing, while appellee was fully informed on that point, but made no objection.

Much stress is laid by counsel for appellee upon the fact that by the applications for the loans, John S. Sheldon was authorized to procure the loans for appellants, it being argued therefrom that they must have known that he would dispose of the securities, and are therefor estopped to deny knowledge that he had done so. We do not think this was at all a necessary consequence. The applications were made to him for the money. He had already furnished it, in fact, and although the applications were made upon the blanks which he may have been in the habit of using when about to procure money from third parties, we are of the opinion that persons as ignorant of business and business forms as appellants appear to have been, would not necessarily receive the impression that he intended to sell or transfer the securities to others. We fail to see any evidence of negligence on the part of appellants so far as this point is concerned. Indeed we are at a loss to perceive how these applications have any important bearing upon the questions involved. It is further insisted by counsel for appellee, that there was in fact no payment, because appellants did not pay over the money to John S. Sheldon, and even if he had the right to receive payment he could only receive money, and could not turn over his own debt to appellants and treat it as payment upon the mortgages. We think

there is no force in this contention. The money was deposited in his bank to their credit. By simply drawing a check they could have gotten manual possession of the money and handed it back to him in payment on the mortgages. If the parties saw fit to waive that formality and simply have the amount credited on the mortgages and thus wipe out so much of their deposit in the bank, we think it was perfectly competent for them to do so. The law never requires the doing of useless things to establish legal rights, and in equity the substance of the transaction is to be looked to and not the mere form. Payment in this case was made substantially in the same manner as in the case of McAuliffe v. Reuter, *supra*, which was held to be a good payment.

On the whole we are of the opinion that appellants are entitled to a credit of $500 on each of said mortgages, and that the decree finding to the contrary was erroneous. Interest having been paid in full on the balance of the mortgage debt remaining unpaid, and the principal not being yet due when the suit was brought, there was then no default, and appellee had no right to maintain this action. The decree must therefore be reversed and the cause remanded, with directions to the Circuit Court to dismiss the bills in both cases.

Reversed and remanded with directions.