(No. 22450.—

THE FIRST NATIONAL BANK OF CHICAGO, Appellant, *vs.*
ANTONIO PARIS *et al.*—(THE JOHNSON LUMBER AND
FUEL COMPANY, Appellee.)

*Opinion filed October 24, 1934—Petition stricken Dec. 13 for
violation of Rule 44.*

TATGE & TATGE, and LATHROP, LATHROP, BROWN & LATHROP, (ROBERT F. KOLB, of counsel,) for appellant.

WELSH & WELSH, and NELSON & NELSON, (C. K. WELSH, and CARROLL NELSON, of counsel,) for appellee.

Mr. JUSTICE HERRICK delivered the opinion of the court:

The First Union Trust and Savings Bank of Chicago (hereinafter called the bank) on August 14, 1931, in the circuit court of Winnebago county, filed its bill to foreclose a real estate mortgage made by Antonio Paris and his wife, Jiosina, on October 18, 1928, to the Prudential Insurance Company of America (hereinafter called the insurance company). By this mortgage the mortgagors, to secure the payment of their note in the principal sum of $4500, bearing even date with the mortgage and payable to the order of the insurance company, conveyed and mortgaged to the insurance company certain real estate situated in the city of Rockford. Paris, his wife and the Johnson Lumber and Fuel Company (the latter hereinafter called the lumber company) were made defendants. Paris and his wife each defaulted. The lumber company filed an answer in substance setting up title to the premises in controversy free of the supposed lien of the mortgage sought to be foreclosed and denied that the complainant was entitled to any relief. Subsequently the First National Bank of Chicago was permitted to intervene and became a party complainant and filed its supplemental bill alleging the assignment of the note and mortgage to it on July 15, 1933. The answer of the lumber company was extended to the bill and supplemental bill. On a hearing the circuit court dismissed the bill and supplemental bill for want of equity. The Appellate Court for the Second District affirmed that decree. The record comes to this court for review on leave to appeal granted to the First National Bank of Chicago.

There is no dispute about the facts in the case. Paris and his wife made their application through an agency at

Rockford for a mortgage loan in the sum of $4500 on the premises. The agency at Rockford sent the application to the bank. The bank prepared the mortgage and note in question. The same were executed and returned to the bank. The bank caused the mortgage to be filed for record in the recorder's office of Winnebago county on October 24, 1928, and thereafter, on October 30, 1928, paid through the Rockford agency to the mortgagors the sum of $4332.65, which represented the proceeds of the loan after deducting certain expenses in connection therewith. After the payment of such sum the bank sent the mortgage and note to the insurance company pursuant to an agreement that the bank had with the insurance company to the effect that if the paper met with the requirements of the insurance company after an investigation thereof, it should retain the mortgage loan and pay the bank the amount of the loan. Under this arrangement the insurance company had a certain period within which to accept the mortgage and note or return them to the bank. Before the expiration of that time the insurance company, about December 23, 1929, returned both the mortgage and note to the bank, with the written assignment without recourse. On February 11, 1929, the lumber company filed its bill in equity in the circuit court of Winnebago county for the foreclosure of a mechanic's lien in favor of the lumber company upon the premises in question. The defendants to the bill to foreclose the mechanic's lien were Paris and his wife and the insurance company. Personal service of process was had upon all the defendants, service being had upon the insurance company by the service of the summons upon an agent of the company in Winnebago county. A decree of foreclosure in its favor on the bill brought by the lumber company was entered July 16, 1929. By that decree the circuit court found that the mortgage to the insurance company was subordinate to the rights of the lumber company against the premises and ordered the premises sold

to satisfy the amount of the decree and the costs of the suit. The premises were sold on September 12, 1929. The lumber company bought the premises at the sale. No redemption was made, and on December 15, 1930, the master in chancery issued and delivered his deed to the lumber company conveying the premises to it. This deed was filed for record on December 16, 1930.

On the trial of the case at bar the lumber company offered in evidence the decree rendered in the foreclosure of the mechanic's lien case. Over the objection of the appellant the decree was admitted in evidence. This decree contained jurisdictional findings that all the defendants, including the insurance company, had been personally served with process in the proceeding and that the court had full and complete jurisdiction of the parties to and the subject matter of the cause. The appellant thereupon offered in evidence the summons, and the return thereon, in the same cause. The return showed service of the summons upon the insurance company by serving E. C. Stockberger, loan agent of the insurance company, but contained no statement that the president of the company was not found in Winnebago county. The lumber company, over the objection of the appellant, then offered in evidence the testimony of the deputy sheriff who served the summons. His testimony was, in substance, that before the making of the service of the summons he made inquiry as to whether the president of the insurance company was in Winnebago county and learned that he was not but that Stockberger was the loan agent of the insurance company, and having ascertained that the president of the insurance company was not in Winnebago county the deputy sheriff served the summons upon such agent. This evidence was further supplemented by proof that the president of the insurance company was not in Winnebago county at any time during the month of February, 1929. The court then, upon motion of the lumber company, permitted the return to be amended by recit-

ing the fact that the president of the insurance company was not found in Winnebago county.

Two issues are presented here for our determination: (1) Whether the trial court erred in holding that it was not necessary for the lumber company to join as parties defendant in its mechanic's lien foreclosure suit, any parties in relation to the mortgage in question other than the record title holder, the insurance company, and the payee insurance company named in the note secured by the mortgage; and (2) whether the trial court erred in allowing the lumber company to amend the return of the summons in the mechanic's lien foreclosure suit.

On behalf of its claim that the bank was a necessary party to the mechanic's lien foreclosure suit, it is earnestly contended by the appellant that the title to the note and mortgage never passed to the insurance company; that the ownership of such instruments was always in the bank, and that, the note being a negotiable instrument, the lumber company should have made the actual owner of the note defendant in its action; that the lumber company had no legal right to rely on the record as to the ownership of the note but should have made inquiry as to such ownership, and if unable to get the information then it should have made the "unknown owner" of the note defendant under the provisions of section 7 of the Chancery act, (Smith's Stat. 1933, chap. 23, p. 251; Cahill's Stat. 1933, p. 227;) and the bank not being made defendant in such proceeding, the appellant is not concluded by the decree in the proceeding to foreclose the mechanic's lien.

In support of its contention that the lumber company was not justified in making the insurance company, as the mortgagee and the payee of the note, the sole defendant as to any rights growing out of those instruments, and that the actual owner and holder of the note should have been made a defendant if known, and if unknown, then such owner or holder should have been made a defendant

by the name of "unknown owner" of such note, the appellant cites *Bannon* v. *Thayer,* 124 Ill. 451, *McGraw* v. *Bayard,* 96 id. 146, *Rodman* v. *Quick,* 211 id. 546, and other cases. Careful examination of those cases discloses that the instruments there pledging the real estate as security for the payment of the notes described in such instruments were trust deeds with notes payable to the order of the maker thereof, except in *Rodman* v. *Quick, supra.* In the last named case the notes were made payable to a named payee other than the trustee. The trustee died before entry of the decree. The successor in trust was not, nor was the payee of the notes, made defendant. It is also true that the notes in that case had been negotiated and the subsequent holders were not made defendants. That case, however, did not hold that if the payee of the notes named in the trust deed, and the successor trustee, had been made parties defendant in the foreclosure proceeding, and without notice to the complainant there that the notes had been negotiated, or without notice to her of facts sufficient to put her on her inquiry, the decree would not have completely barred the rights of the subsequent note holders.

Great stress is placed by the appellant upon the decision in *Bannon* v. *Thayer, supra.* That case is not applicable to the case at bar. There the note was made payable to the order of the maker, endorsed in blank and secured by a deed of trust. The holding there is merely to the effect that both the trustee and the *cestui que trust* were necessary parties in foreclosure of a mechanic's lien affecting the title to the real estate. The complainant in that case must, of course, have known that the defendant was not the owner of his own note secured by a deed upon his own real estate, and the fact that the holder of the note was unknown was no justification for not making him a party. There is a broad distinction between the rule in notes secured by a trust deed upon the real estate where the notes are made payable to the order of the maker and

by him endorsed, and in the case where a mortgage is made direct to the mortgagee securing a note payable to the mortgagee. In the case of a trust deed where the premises are conveyed and mortgaged to the trustee, ordinarily he has no interest in the debt itself. Generally, certain powers are conferred upon him which he exercises only in case of default in some or all of the provisions of the trust deed. He has no power to receive payment before maturity of the debt secured by the trust deed unless so expressly authorized by that instrument, and he cannot release the instrument except upon the payment of the debt or by the consent of all the holders of the indebtedness secured by such instrument. Usually the mortgage secures the debt to the mortgagee. In such situation he is the sole arbiter with reference to the collection of the debt and the release of the lien created by the mortgage. He has a personal interest in the matter, and in the event of transfer or negotiation of the note in due course the mortgage is generally assigned in writing directly to the holder of the negotiated note. If there is no direct assignment of the mortgage, equity creates an equitable assignment thereof.

There is a wide difference between notes payable to the order of the maker and those payable to a certain named payee other than the maker. It is obvious that a note payable to a maker is a nullity until it is negotiated to some third person, and where the instrument securing the note recites that it is payable to the maker and by him endorsed, there would be notice at least, if not a presumption, that the note was so written for the purpose of negotiation to third parties. A person interested in the premises would be put upon his inquiry to ascertain to whom the note had been negotiated. Where the note is secured by a mortgage, the note secured thereby, payable to a certain named person, mortgagee or otherwise, and the mortgage placed of record, such recording of the mortgage is notice of the presumptive delivery of the note and mortgage, and in the situ-

ation where the mortgagee and payee of the note are the same person, the presumption is that the holder and owner of the mortgage are identical. There is no presumption that the note will be further negotiated. As against other lienors or encumbrancers, the party to whom the note is transferred in order to protect his rights must give either actual notice of the change of ownership of the note to the other lienors, encumbrancers or purchasers of the property, or record some appropriate notice of the transfer in the proper county of the change of ownership of the note. The assignment of the note secured by a deed of mortgage, while it operates as an equitable assignment of the mortgage, becomes operative as against creditors, purchasers, lienors and encumbrancers only upon notice, actual or constructive.

One of the purposes of the Recording act is to give notice to the public of the encumbrances against real estate and the amount, priority and ownership of the encumbrance thereon, and the public has the right to rely on and be protected by such record. In the absence of actual notice of facts affecting the title not disclosed on the public record, or of facts sufficient to put one on inquiry, strangers to the title who are interested in the real estate have the right to rely upon the title as shown by the record. It is not charged by the pleadings in the case that the lumber company had any notice of the transfer of the note and mortgage to the bank. The record of the mortgage in question showed that the note was payable to the insurance company, the mortgagee. Any lienor, encumbrancer or judgment creditor had a right to assume from the record of the mortgage that the insurance company was the owner of the note. The fact that the note was negotiable and had not matured was not sufficient to put the lumber company on inquiry as to the ownership of the note or to charge it with notice that the note might have been negotiated.

It is a fundamental principle of equity that where one of two interested parties must suffer, he whose conduct has contributed in the bringing about of the condition which occasions the loss must suffer the consequences of his act, be the same negligence or otherwise. The bank had it within its power by recording such assignment to give notice to the world as to the true ownership of the note and mortgage. It failed to do this. There was nothing to put the lumber company upon notice of the rights of the bank. In that situation a court of equity will protect the lumber company as against the bank, which held the note and mortgage in secret, permitting the world to believe that the note and mortgage were owned by the insurance company. A party cannot lead a person into an erroneous belief of the ownership of a note or mortgage who relies upon the ownership thereof as shown by the public records, and then take advantage of his own act to the prejudice of the party relying upon the record, who by reason of such record has committed the error complained of.

It is earnestly urged by the appellant that the insurance company never had the title to the note and mortgage in question; that such instruments were always the property of the bank and the appellant, and that the bank had a right to take the note and mortgage payable to the insurance company, and that the bank might bring suit on such note and mortgage by alleging it took the mortgage and note by the name of the insurance company, without alleging the assignment of either the note or mortgage to it, upon the authority of *Bonner* v. *Gordon,* 63 Ill. 443, upon which the appellant relies. If we adopt this theory urged by the appellant that the bank for the purpose of this loan adopted the name of the insurance company, or that the bank was doing business in this particular instance in the name of the insurance company knowing that there was such a corporation in existence, it would naturally follow, then, that as to this particular transaction without notice

to the lumber company of the true facts, service upon the insurance company would be service upon the bank, and the bank could not complain of lack of service upon it in its true corporate name.

As to the second proposition advanced by the appellant, that the trial court erred in permitting the amendment on the return to the summons in the mechanic's lien case, it should be borne in mind that neither the bank nor the appellant was a party to that action. The bank did not rely upon any record in that proceeding in making the loan in question. Neither the bank nor the appellant occupies in that situation the position of an innocent purchaser, encumbrancer or lienor who has relied upon the record of the return of the sheriff on the summons and the correction of which return would prejudice rights which either had acquired in good faith, relying upon such improper return. The written return of the process served by the sheriff is not the service but only written evidence of the fact of service. Where the return is subsequently amended, the fact as to how the process was actually executed is not changed but only the evidence of the fact is changed to speak the truth as to the facts. (*Spellmyer* v. *Gaff,* 122 Ill. 29; *Tewalt* v. *Irwin,* 164 id. 592; *Hinkle* v. *City of Mattoon,* 170 id. 316; *Chicago Planing Mill Co.* v. *Merchants Nat. Bank,* 86 id. 587; *Dunn* v. *Rogers,* 43 id. 260.) The appellant having offered in evidence the summons in the case, in which it was not a party to the record, it was proper for the lumber company to amend the summons so as to show the correct facts relative to the service thereof, and the amendment was made in apt time.

The decree of the circuit court was in accordance with the law. The judgment of the Appellate Court affirming such decree was correct, and it is therefore affirmed.

*Judgment affirmed.*