Corn Belt Building and Loan Association, Appellant,
v. Earl Grabe et al., Appellees.

Gen. No. 9,076.

Opinion filed
April 20, 1938.

COTTON & NICHOLS, of Tuscola, for appellant.

WALDEN & WALDEN, for appellees Earl Grabe and
Helen E. Grabe.

CHARLES M. BORCHERS and JAMES S. BALDWIN, both of Decatur, for appellee Orlando G. Collins.

MR. JUSTICE RIESS delivered the opinion of the court.

A decree in equity was entered in the circuit court of Macon county, wherein it was found that a certain real estate mortgage executed by the appellees Earl Grabe and Helen E. Grabe to one Laurence O'Mara and by him assigned in blank to the defendant appellee O. G. Collins, constituted a first or prior mortgage lien on the premises therein described, and that there was also due from said mortgagors to the plaintiff appellant, Corn Belt Building and Loan Association, an unpaid balance of $993.23 on a certain subsequent mortgage lien on said premises in the sum of $4,144.47, after allowing a set-off of $3,151.24 on a counterclaim filed by said mortgagors. A decree of foreclosure and for sale of the mortgaged premises was entered accordingly, from which findings and decree, the appeal herein was taken.

On August 28, 1930, Earl Grabe and Helen E. Grabe had executed the above mortgage in the sum of $2,500 to said Laurence O'Mara to secure the payment of five promissory notes of that date, four being for the principal sum of $300 each and respectively due in one, two, three and four years after date, and one note being for $1,300 due five years after date, each providing that $25 or more could be paid thereon at any time. These notes were made payable to the order of Laurence O'Mara, the mortgagee, and were indorsed by him in blank, without recourse, and delivered to Dr. O. G. Collins, one of the defendant appellees, together with the recorded mortgage to which was attached a written assignment in blank on August 30, 1930. The assignment of this mortgage was not, however, recorded until April 8, 1934, the name of Collins having been inserted therein subsequent to the time of assignment and before the assignment was recorded.

In November, 1930, Grabe desired to obtain additional funds for the purpose of making repairs on his property and arranged through one M. L. Moyer of Decatur, Illinois, for such a loan, Moyer being at that time engaged in the business of making mortgage loans on real estate. Moyer submitted an application to the appellant Corn Belt Building and Loan Association on behalf of Grabe and his wife for a loan of $3,000, representing an increase of $500 over the existing mortgage loan of Laurence O'Mara.

After receiving this application, the appellant had the abstract of title to the property examined by an attorney and the mortgage lien appeared thereon. In the meanwhile, Moyer ascertained from James O'Mara, the father and business partner of Laurence O'Mara that the amount necessary to pay off the $2,500 mortgage loan previously made by Laurence O'Mara would be the sum of $2,543.75, and that the check should be made to the firm of James O'Mara and Son.

The appellant then made the loan applied for on the sixth day of November, 1930, and Earl Grabe and Helen E. Grabe executed the $3,000 mortgage, which was duly recorded on December 1, 1930, covering the same property described in the mortgage given to O'Mara and assigned in blank to O. G. Collins. The appellant then issued checks which were sent to Moyer, with instructions to get a release of the O'Mara mortgage and a lien waiver from the Decatur Lumber Company. Moyer took the check issued by appellant payable to James O'Mara and Son, from whom he received a release of the $2,500 mortgage in question executed by Laurence O'Mara, the mortgagee, and the same was duly recorded, and also procured the lien waiver of the lumber company. Certain other checks were sent to Moyer for distribution, including a check to Grabe for the net balance of $229.25 on the $3,000

loan, and from this balance, Moyer was paid a three per cent commission for procuring the loan.

In 1934, Grabe learned that there were apparently two claimants of mortgage liens on his property and stopped paying dues to the Corn Belt Building and Loan Association, and on April 5, 1935, said association filed a suit to foreclose its mortgage and recover on said indebtedness.

Appellee Collins filed his answer and counterclaim, setting up that he was the owner of the notes secured by the mortgage to O'Mara, all dated August 28, 1930, and alleged that his mortgage constituted a first lien on the premises and asked for a decree of foreclosure thereon. Appellees Earl Grabe and Helen E. Grabe filed their answer and counterclaim, alleging the above payment and seeking for damages and recoupment thereof. Defendant R. H. Burns was a judgment creditor whose claim is not in controversy here, and the remaining defendant, J. S. McKinney, was a tenant who had in the meantime moved from the mortgaged premises.

No questions concerning the pleadings are raised, hence their allegations need not be set forth in greater detail. The sole controversy concerns the existence, priority and amount of the above mortgage liens.

It appears from the evidence that James O'Mara had engaged in the business of making mortgage loans under the firm name of "Schoenle & O'Mara" from September, 1913, until May, 1929; that after May, 1929, he engaged in this business under the style of "James O'Mara and Son," the firm consisting of James O'Mara and Laurence O'Mara.

Over a period of more than 15 years James O'Mara had loaned a large amount of money for Dr. O. G. Collins, the defendant appellee herein. The evidence shows that Collins and James O'Mara had known each other for more than 40 years, that Collins had pur-

chased and negotiated loans through O'Mara for many years prior to the Grabe loan in question, and that O'Mara had handled approximately 150 new and renewal loans for Collins aggregating more than $200,000. When a loan was purchased or negotiated by Collins, he signed an interest contract providing that O'Mara should receive one per cent for collecting interest and handling the loan, and that if the loan was transferred by Collins, the interest contract should accompany the assignment. No loan was ever taken directly by or in the name of Collins, but was taken in the name of O'Mara and later assigned in blank. It was the practice of the parties to have O'Mara collect the principal and interest on Collins' loans until he obtained sufficient money to make a new loan, which would then be made by O'Mara, and Collins would give his check to O'Mara for the amount necessary to purchase or complete the loan.

Ordinarily, Collins was not notified when a loan was paid off until the money had actually been paid to O'Mara, whereupon Collins would take his notes and mortgage to O'Mara's office, and O'Mara would execute the necessary release of the mortgage in his own name and have the same recorded. Principal and interest on all loans was so paid at O'Mara's office, and never to Collins, who always received his money from O'Mara by the latter's check and not by the check of the borrower. When Collins was out of the city, O'Mara would collect the principal and interest and hold it until his return. When the Grabes procured their loan from Laurence O'Mara, they did not know that Collins was in any way interested, and did not learn that he was the owner of the $2,500 mortgage until December, 1933. It is admitted by Collins that he had no dealings whatever with Mr. and Mrs. Grabe, and that no one but O'Mara and Collins knew that the latter was the real owner of the notes and mortgage.

The evidence fails to disclose that the mortgagors, Grabe and his wife, or the appellant Loan Association had any notice of an assignment or change in the ownership of the mortgage and notes or in the manner of payment of the interest or principal due thereon.

When appellant's loan was made to Earl Grabe, the latter told Moyer that he wanted the O'Mara note paid off and that Moyer should take up the canceled notes and mortgage at the time of the payment and return them to him or destroy them. Moyer paid to O'Mara the amount due on the notes and mortgage by check of the Loan Association to James O'Mara and Son, and the mortgage release by Laurence O'Mara was procured and duly recorded, but Moyer failed to take up the notes and mortgage. There is some conflict in the testimony as to whether Earl Grabe and Helen E. Grabe gave similar instructions to appellant. Whether or not Moyer demanded the notes and mortgage at the time he paid off and procured the release of the mortgage is not controlling in this case.

From a careful consideration of all the evidence in the record we find it to clearly appear from the manifest weight of the evidence and the law applicable thereto that James O'Mara and Son, Laurence O'Mara, were at the time of the execution of the Grabe mortgage, purchased by Collins, acting as the general agents for Collins in making, collecting and releasing mortgage loans generally for him, and that for a long period of years had been so collecting interest, receiving the principal of loans and releasing mortgages for Collins, and that in making the Grabe loan, collecting interest, receiving payment thereof and in releasing the mortgage, were so acting as the agents of Collins, the undisclosed principal upon whom such acts were binding. Consequently Collins, through his course of conduct, is now estopped from questioning such agency. *Voelkner v. Ott,* 197 Ill. App. 520; *Linowiecki v. Wisniewski,* 249 Ill. App. 474.

The general rule in Illinois is that a mortgage is not a negotiable instrument, but is a mere chose in action, and an assignee, to be protected against such payments by the mortgagor, must either have the assignment recorded, or the mortgagor must have notice of the rights of the assignee. *Buehler v. McCormick,* 169 Ill. 269, 48 N. E. 287; *Freitag v. Buck,* 279 Ill. App. 284; *McAuliffe v. Reuter,* 166 Ill. 491, 46 N. E. 1087.

As said in *First Nat. Bank of Chicago v. Paris,* 358 Ill. 378, at page 385, 193 N. E. 207, "One of the purposes of the Recording act is to give notice to the public of the encumbrances against real estate and the amount, priority and ownership of the encumbrance thereon, and the public has the right to rely on and be protected by such record. In the absence of actual notice of facts effecting the title not disclosed on the public record, or of facts sufficient to put one on inquiry, strangers to the title who are interested in real estate have the right to rely upon the title as shown by the record."

Much stress is laid by counsel for appellee Collins upon the fact that James O'Mara and Son were in the loan business and that, therefore, appellee Grabe should have known that some third party had acquired the note and mortgage in question. We do not think this was at all a necessary consequence. Grabe had a previous loan from the O'Mara firm which was refinanced when the $2,500 loan was made. He had paid all of his interest direct to O'Mara and had secured a release of the former mortgage when the loan was refinanced. Obtaining a loan from a loan broker does not raise the presumption that it would be further negotiated. *Sheldon v. McNall,* 89 Ill. App. 138, 146.

Nor do we think a different rule applies to the appellant under the facts in evidence. The attorney of the appellant had examined the abstract and found the mortgage of record in the name of O'Mara. No assignment thereof appeared upon record. They had a right

to assume ownership by the record holder, unless some actual or constructive notice came to them of ownership, or claim of ownership, by a third party. They issued their checks for the amount due and requested Moyer to procure the release of the mortgage from such record holder, which was done. Moreover, we have held that the undisclosed relation of principal and agent existed between the O'Maras and appellee Collins.

The facts and principles controlling in the case of *Siekmann v. Stanton,* 251 Ill. App. 442, and other cases cited by the appellee are clearly distinguishable from and are not applicable to the facts in the case at bar.

In the case of *McAuliffe v. Reuter, supra,* cited in *Sheldon v. McNall, supra,* a note and mortgage were executed and the mortgagee sold and transferred them to a third party. Of this the mortgagor had no notice, and continued to deposit money with the mortgagee until the amount reached the sum which the mortgagor had received from the mortgagee when the latter failed, and the mortgagor then received notice for the first time that the mortgage and note had been assigned. The assignee of the mortgage had received his interest from the mortgagee, but had never had any communication whatever with the mortgagor. It was held that the assignee was bound by the payments to the mortgagee. It was further held that the mortgagor was not chargeable with negligence in not demanding the production of the note and mortgage when making deposits, when his action was justified by former dealings with the bank of the same nature.

In the recent case of *First Nat. Bank of Chicago v. Paris, supra,* at page 385 of the opinion of the court rendered by the late Chief Justice Lott Herrick, wherein certain holdings announced in previous cases were considered and distinguished, it was said that: ''The record of the mortgage in question showed that the

note was payable to the insurance company, the mortgagee. Any lienor, encumbrancer or judgment creditor had a right to assume from the record of the mortgage that the insurance company was the owner of the note. The fact that the note was negotiable and had not matured was not sufficient to put the lumber company on inquiry as to the ownership of the note or to charge it with notice that the note might have been negotiated.

"It is a fundamental principle of equity that where one of two interested parties must suffer, he whose conduct has contributed in the bringing about of the condition which occasions the loss must suffer the consequences of his act, be the same negligence or otherwise. The bank had it within its power by recording such assignment to give notice to the world as to the true ownership of the note and mortgage. It failed to do this. There was nothing to put the lumber company upon notice of the rights of the bank. In that situation a court of equity will protect the lumber company as against the bank, which held the note and mortgage in secret, permitting the world to believe that the note and mortgage were owned by the insurance company. A party cannot lead a person into an erroneous belief of the ownership of a note or mortgage who relies upon the ownership thereof as shown by the public records, and then take advantage of his own act to the prejudice of the party relying upon the record, who by reason of such record has committed the error complained of.''

We hold that the principles announced in *McAuliffe v. Reuter, supra,* and in *First Nat. Bank of Chicago v. Paris, supra,* are applicable to and controlling under the facts disclosed by the evidence in this case. We hold the equities of this cause to be with the appellant Loan Association and the appellees Earl Grabe and Helen E. Grabe under the counterclaim filed by O. G.

Collins and that the trial court erred in granting said Collins the equitable relief prayed for therein. We further hold that it was error to allow the same as a set-off against the mortgage lien of the appellant under the original complaint.

It is unnecessary, therefore, to further discuss the counterclaim filed by Grabe for the reason that if a decree is entered in favor of the appellant Corn Belt Building and Loan Association for the amount of its mortgage indebtedness, the counterclaim of the Grabes necessarily fails.

The decree of the circuit court of Macon county is reversed and the cause remanded with directions to the trial court to enter a decree in accordance with the decision of this court herein.

*Reversed and remanded with directions.*